## JAMES LICK v. BENITO DIAZ AND ANTONIO MESA, et als.

ALCALDE'S GRANT TO TWO PERSONS.—After a grant of a lot had been made by an Alcalde of Yerba Buena to two persons jointly, and possession had been delivered, a certificate made by the Alcalde, written on the same piece of paper as the grant, stating that one of the grantees has renounced his property in the lot, and that it shall be the property of the other, does not divest the grantee so alleged to have renounced of his title, unless it appears that he authorized the Alcalde to make the certificate.

DELIVERY OF ALCALDE'S GRANT TO PASS TITLE.—If the delivery of a deed of concession made by an Alcalde was essential to pass the title, the presumption is that the delivery was made at the time the deed was executed. Whether such delivery was essential, not decided.

DIVESTITURE OF TITLE ONCE GRANTED BY AN ALCALDE.—Where an Alcalde made a deed granting a lot to two persons jointly, and afterwards certified on the same piece of paper that one of them had renounced his right, and the lot had become the property of the other, such certificate is insufficient to establish the fact of renunciation, but the presumption is that the title remained in the person alleged to have renounced.

STATUTE OF LIMITATIONS MUST BE DULY PLEADED. — A party relying upon an adverse possession of five years of land owned by himself and the adverse party as tenants in common, must allege by pleading facts from which it will affirmatively appear that his possession was of an adverse and hostile character, otherwise his possession of the land, though exclusive, will be deemed to be according to his right and in support of the title in common.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The defendants, who moved for a new trial, appealed. The other facts are stated in the opinion of the Court.

*E. W. F. Sloan,* for Appellants, argued that the certificate of itself was not operative as a relinquishment, transfer, or conveyance, nor was it competent evidence thereof; that Hinckley could not, either in his private or official character, transfer the property of Mesa to Diaz, without authority specially delegated; nor could Hinckley furnish evidence in the form of a certificate, as the Spanish law did not permit of it, and cited Moreau & Carlton's Partidas, 202, Law 23, Part 3, Title 16.

He argued that under the Spanish law parties who did not wish to intrust the evidence of their contracts to human

memory, could have it a matter of public record by appearing before a notary, who reduced the contract to writing, and caused the parties to sign it, and signed it himself, and the original draft remained in the notary's custody ; but that an Alcalde could not perform such functions, and his certificate was not evidence, and that an officer authorized by law to ascertain and certify certain facts was confined to the power given him, and cited *Williams* v. *Merle*, 11 Wend. 80, and *Ayers* v. *Stewart*, 1 Overton, 221, 222.

He also argued that the grant, as it originally stood, should have been received in evidence without the certificate, and cited *Cooper* v. *Beckett*, 4 Mean's Cases, 449, and *Arrison* v. *Harmstead*, 2 Barr, 193.

*Haight & Pierson*, for Respondent, argued that there having been no *Escribano* or Judge of the First Instance in California, the functions of those officers devolved upon the Alcalde, and cited *Mena* v. *Leroy*, 1 Cal. 220, *Panaud* v. *Jones*, 1 Cal. 508, and *Hayes* v. *Bona*, 7 Cal. 159, and that under Spanish law parol transfers of land were valid, and cited *Hayes* v. *Bona*, 7 Cal. 159, and *Mitchell* v. *Coxe*, 10 Mo. 262, and that a memorandum made by the officer before whom parties appeared would pass title. They also argued that as the Court had found as a fact that the certificate was executed by Hinckley before the grant was delivered, and that there was some evidence to support the finding, it would not be disturbed.

By the Court, CURREY, C. J.:

The plaintiff claiming to be the owner and in the possession of Fifty-vara Lot No. 17, in the City of San Francisco, brought his action on the 5th of July, 1864, against the defendants, having for its object, first, to obtain a decree to enjoin and restrain the heirs of Juan Prado Mesa, deceased, from further prosecuting a certain action by them brought against the plaintiff for the partition of said lot in which they claimed the undivided half of it; second, that the plaintiff be adjudged

and decreed to be the lawful owner of the premises as against the defendants, the heirs of said Mesa, deceased, who, it is alleged in the complaint, claimed one undivided half of the premises, adversely to the plaintiff, and that they be decreed to have no right or title to the same; and third, that the defendants be decreed to release and convey the premises to the plaintiff, etc.

Diaz, who was made a defendant, it appears by the complaint, sold and conveyed the lot to one Le Page, from whom the plaintiff acquired his right, title and interest, and it is charged in the complaint that he was combining and confederating with the other defendants to the injury of the plaintiff. Diaz made default. The other defendants answered controverting the portions of the complaint which were inconsistent with their claim to an undivided half of the premises. As an affirmative defense they alleged that at the time of the death of their father on the 20th of August, 1845, he was seized of an undivided moiety of the lot in question, and died leaving him surviving the children, who are defendants in this suit, as his only heirs at law, in whom such undivided moiety thereupon vested by descent, and that since then they have remained the lawful owners and holders thereof.

The cause was heard and tried by the Court upon the pleadings and evidence. The Court found the following facts:

First—William Hinckley was Alcalde of San Francisco for one year, commencing in March, 1844, and ending in March, 1845, and no longer.

Second—Benito Diaz and Juan Prado Mesa presented a written petition for a grant of the lot in question, which translated reads as follows:

"Señor First Alcalde of San Francisco: Benito Diaz and Juan Prado Mesa, Mexicans and residents of this place, before you in due form represent that, as we need a lot to build a house, and as No. 17 is vacant, which is near the small lagoon and fronting the beach, we beg that you will be pleased to

grant it, wherein we shall receive favor.   We make the necessary oath, etc.

"*Yerba Buena,* July 15, 1844.

"BENITO DIAZ."

Third—Four days after the date of the above petition the Alcalde executed a grant of the lot, which, translated, reads as follows:

"In view of the foregoing representation, and of the supreme decree of the Departmental Government, I, William Hinckley, First Alcalde of this jurisdiction, do give perpetual and legal possession to the citizens Benito Diaz and Juan Prado Mesa, in company, of the lot number seventeen (17) in the plan of Yerba Buena, said lot being fifty varas square, under the following conditions:

"1st. That they will, within the strict term of one year from this date, have the lot fenced and a house built.

"2d. That they will conform in all, and for all, with the police regulations established and to be established.

"The want of the observance of the first article will cause the party in interest to lose his rights to the lot, and in controvening the second, he will incur the penalties which the law may inflict.   And in order that it may serve as a title of possession in due form, I give this in Yerba Buena, this 19th day of July, 1844, having made a memorandum in the proper book of record.

"WILLIAM HINCKLEY.

"Assistant, JOHN ROSE; Assistant, JOHN C. DAVIS.

"Dues $15 5."

Fourth—Succeeding the grant, on the same sheet of paper, in the handwriting of said Hinckley, appears a certificate, of which the following is a translation:

"In virtue of the said Juan Prado Mesa having renounced his right and property in the lot specified in this document, the said lot shall remain in the possession of Benito Diaz, and

be his property for the uses that may suit, he having paid the municipal dues.

" WILLIAM HINCKLEY.

" *Yerba Buena,* 22d July, 1844."

The Court found that from inspection of this certificate the date of it was originally written 22d July, 1845, and was shortly thereafter and before said grant was delivered, altered by writing the figure 4 over the figure 5, thus leaving the date 22d July, 1844.

Fifth—Succeeding said certificate on the same paper, is an entry in the handwriting of Benito Diaz, of which the following is a translation :

" This title passes to the possession of Don Francisco Le Page on account of a donation made by me, as appears by the annexed document.

" BENITO DIAZ.

" *San Francisco,* May 30, 1846."

At the same time Benito Diaz executed and delivered to Le Page an instrument in writing, bearing date on the day last mentioned, purporting to convey to him the entire lot, and actually conveying to him all the right, title and interest of said Diaz therein.

Sixth—On the 5th of February, 1848, Le Page conveyed all his right, title and interest in said lot to the plaintiff.

Seventh—In a book in the office of the Recorder of the City and County of San Francisco, entitled " Book of Possessions of Lots in Yerba Buena, according to the orders of the Departmental Government," is an entry in the handwriting of said Hinckley, of which the following is a translation : " The 19th of July there was granted to Benito Diaz and Juan Prado the Lot No. 17, in the place of Yerba Buena of fifty varas square, and possession was given at the same time that the corresponding grant was exhibited to him."

The Court finds that the entries in the book mentioned succeeded each other in chronological order from the first, which

bears date the 1st of January, 1840, to the last, which is under date of the 6th of June, 1846. That the entry, a translation of which is above set forth, appears in regular order for the year 1844, and is the only entry in the book in reference to the lot in question. That the entry next succeeding it bears date the 13th of November, of the same year.

Eighth—Soon after the date of the grant, Benito Diaz fenced the lot and built a small adobe house at, or near, the centre of the western half of it, which was destroyed by fire in 1850, since which the lot has remained destitute of any buildings or other improvements, except a fence along the front of it. For several years it has been occasionally let by the plaintiff to circus companies for their exhibitions, but has not been otherwise occupied. That plaintiff, since his purchase, has had the actual control and possession of the lot.

Ninth—Juan Prado Mesa, who was Commandante at the Presidio of San Francisco, died in August, 1845, leaving him surviving the children named in the pleadings, his only heirs at law. The several written instruments of which translations are above set forth, are written in the Spanish language upon the same sheet of stamped paper, in the order of their dates, and on the back of this sheet of paper as folded up, is indorsed in the handwriting of Benito Diaz the words, " Benito Diaz y J. Prado."

The Court thereupon rendered a decree to the effect that the plaintiff was the owner of the premises ; that the defendants, nor any nor either of them, had any right, title, and interest therein, and enjoining them from ever so asserting ; and further, forever enjoining the defendants, the heirs of said Juan Prado Mesa, from further prosecuting their action of partition against the plaintiff.

The defendants, except Diaz, moved for a new trial, which was denied. The statement in the case is a succinct exhibit of the evidence produced on the trial, embodying the objections, decisions of the Court and the exceptions taken at the time.

When the certificate, signed by Hinckley, was produced in

.evidence, it appears by the statement that it was "proved by the testimony of an expert, and so appeared from an inspection, that the date of said certificate had been originally written Yerba Buena, 22 de Julio, 1845, and that an alteration had been immediately thereafter made in the same hand, by writing the figure 4 over the space occupied by the figure 5, so as to leave the date 22 de Julio, 1844." It also appears by the statement that " the alteration is nowhere noted on the writing, nor was any evidence offered tending to account for or in any manner explain such alteration." The appellants' counsel thereupon objected to the reading of the certificate in evidence, on the following grounds :

" 1st—Because of such alteration, it not being noted on the writing or otherwise accounted for.

" 2d—Because it was not, nor does it appear or profess to have been an authentic or official act.

" 3d—Because it does not sufficiently appear to have been written by William Hinckley, during his term of office as Alcalde.

" 4th—Because it is not attested by witnesses ; is inoperative as a relinquishment, transfer or conveyance, and is of itself incompetent evidence thereof."

The Court overruled the objections, and the certificate was read in evidence. To this ruling the appellants' counsel excepted.

The parties stipulated that the statement contained all the evidence in the case. We thus have before us all that was before the Court on the trial.

The appellants maintain that the Court erred in admitting in evidence the certificate signed by Hinckley, and also that the evidence was insufficient to justify the finding of facts in the following particulars, to wit :

1st—In finding that this certificate was entered upon the *titulo* or title deed before it was issued.

2d—In finding that the alteration in the date of the certificate was made before the grant was delivered.

3d—In finding that Hinckley acted officially in writing said certificate.

### *Power of Alcalde to take away a grant once made.*

There is nothing in the case from which it can be inferred that Juan Prado Mesa appeared before the Alcalde and authorized him to make the certificate in question; and it is not claimed by the plaintiff that if the certificate was made without the authority of Mesa after the grant was made and the *titulo* delivered to him and Diaz, it could have the effect to divest Mesa of the undivided half of the lot. Hence, if such certificate could in any view be regarded as a part of the title deed, and with it as originally intended to be made, could operate as evidence of a grant of the entire lot to Diaz, it must be so because it was made before the grant was in fact consummated by a delivery. Assuming then that the certificate was made on the 22d of July, 1844, instead of a year later or at any subsequent time, is it therefore legitimate to conclude that it was made before the grant was issued and the title to the lot transferred to Diaz and Mesa *en compañia*? The grant was made and entered in the proper book of record, three days before the date of the certificate. This certificate was not recorded or noted in the book of record, while it appears by the "Book of the Possessions of Lots," that on the 19th of July, 1844, there was granted to Benito Diaz and Juan Prado Mesa the lot in question, and possession of it was given at the time. If a delivery to the grantees of the deed of concession was essential (a point which we do not now decide,) it will in the first place be presumed the delivery transpired at the time the deed was executed. (*Seymour* v. *Van Slyck*, 8 Wend. 414; *Breckinridge* v. *Todd*, 3 Monroe, 54.) But beyond the presumption, the record evidence in its obvious import shows that the grant was consummated before the grant of July 22d was written. The title having vested in Diaz and Mesa *en compañia*, the latter could not be divested of his interest in the property at the mere will of the Alcalde, even if it were conceded that he attempted in his official capacity to do this.

There is no evidence that Mesa ever relinquished or in any manner conveyed his interest in the lot to Diaz; and that he did so cannot be inferred from circumstances of uncertain import. The title to half the premises having passed by the grant to Mesa, it must, in the absence of evidence to the contrary, be presumed to have remained in him until his death, and then to have passed by descent to his heirs at law.

By the laws in force in California before the treaty of Guadalupe Hidalgo, sales of land were required to be made in writing on stamped paper. This requirement was probably of statutory origin, designed as a fiscal measure for replenishing the public treasury; because by the Fifth Partida, Title 5, Law 6, it appears that sales and purchases might be effected either with or without writing. Whether conveyances of land could be made without conforming to the laws and regulations requiring them to be in writing, it is not necessary to decide in this case. The fact is they were generally made in writing in the presence of the Alcalde, who performed the functions of an *Escribano Publico* in the premises. The conditions necessary to render a contract of sale valid were specific. One of them was that the contracting parties must possess legal capacity to contract with each other, and the contract must be entered into by them respectively with entire freedom. (*Merle* v. *Matthews*, 26 Cal. 468–474.) Now, if the language of Hinckley's certificate, had it been consented to by Mesa, was sufficient to operate as a relinquishment or transfer of his right and interest in the lot to his co-grantee, Diaz, it does not appear that he was a party to it, or gave to it his consent. At the time of the death of Mesa he was, upon the face of the record evidence produced from the custody of the plaintiff, the owner, with Diaz, of the premises. Such being our views, it is of no importance to inquire whether the certificate was made on the 22d of July, 1844, or a year later.

*Presumption that a grant was delivered the day of its date.*

The grant having been made to Diaz and Mesa jointly, the law presumes, as we have seen, that it was delivered to them

on the day of its date. The presumption was not sought to be overcome by the plaintiff by the proof of any fact tending to disturb it. On the contrary, the evidence in the case strongly tends to show that this presumption of law accorded with the truth, for in the "Book of Possessions of Lots in Yerba Buena," an entry was made by the Alcalde, stating that the lot in controversy was granted to " Benito Diaz and Juán Prado" on the day the title paper in question bears date, and that possession was given at the same time. This is affirmative evidence in support of the vesting of the title to the lot granted in Diaz and Mesa jointly. The Court finds that the entry referred to " appears in regular order for the year 1844, and is the only entry in said book in reference to the lot in question," and that the entry next succeeding it bears date on the 13th of November of the same year. There is nothing in the finding or in the evidence casting the least suspicion upon the verity of the entry so made. This is not all; the title deed as folded up has an indorsement on it of the names, " Benito Diaz y J. Prado." This indorsement is in the handwriting of Diaz. Thus is afforded a circumstance tending to show that Diaz had possession of the deed before it was claimed by him to be a grant to him alone, and before the certificate mentioned was written. In addition to these circumstances, it appears that Diaz built a small adobe house at or near the centre of the west half of the lot, at which time Mesa was Commandante of the military at the Presidio, which furnishes an excuse, if any was necessary, for his omission to build upon and occupy in person the other half of the lot.

As the case stands upon the record before us, we are of the opinion the Court below should have found that, by the grant of the Alcalde, the title to the lot in question vested in Diaz and Mesa jointly, and that upon the death of Mesa in August, 1845, his interest in the property descended to the appellants, his children and heirs at law.

Here the case would end but for the interposition of the Statute of Limitations by plaintiff's counsel in the argument of the case in this Court.

### *Pleading Statute of Limitations.*

The plaintiff set forth in his complaint specifically the facts upon which he relied as showing his right to relief. These facts consist of the grant alleged by him to have passed the title to the property in entirety to Diaz, and the conveyance by Diaz to Le Page, and the conveyance by Le Page to the plaintiff, and following upon this, his alleged " actual, undisputed, open and notorious possession of said premises, and every part and parcel thereof, without any interference or molestation whatever on the part of Juan Prado Mesa or his heirs."

The complaint does not state facts from which it affirmatively appears that the plaintiff's possession was of an adverse or hostile character. It may, for aught that appears in the complaint, have been only according to his right, and in support of the title in common. In answer to the complaint the defendants say they never had any notice or information that the plaintiff ever claimed the exclusive ownership or possession of the property adversely to the right of the defendants, until he disclosed such claim in his answer in the partition suit mentioned in the complaint.

It is manifest from the complaint the plaintiff staked his right to the relief which he sought upon the title which he claimed vested the property in entirety in Diaz by the grant of the Alcalde, and his own acquisition of that title and possession of the property under it. The complaint does not show that he relied upon a disseizin or ouster of his co-tenants of the freehold, as a foundation of title to the undivided half of the premises; and we think it would be extending the rule of indulgent and liberal construction of pleadings to an extent defeating the ends of justice to hold that the pleadings in this case raised an issue of title in the plaintiff, having its origin and continuance in an ouster of the defendants, and an adverse possession of the property by the plaintiff for the period of five years before action brought. It is evident from the finding that the Judge who tried the cause did not consider that such an issue was

involved in the case. He made no allusion to such an issue, nor does the finding of facts in the remotest degree suggest that such an issue was supposed to be joined between the parties.

The judgment is reversed and the cause remanded for a new trial.