# JAMES LICK *v.* BENITO DIAZ, AND ANTONIO MESA.

ALCALDE'S GRANT.—Although neither the delivery of an Alcalde's grant nor the payment of the municipal fees were necessary to vest title in the grantee, yet, if immediately after a grant was made to two persons, and signed and recorded in due form by the Alcalde, the grantees appeared before him, and one of them verbally renounced his right in the lot granted, the Alcalde might amend his record by indorsing on the back of the grant the renunciation, and the fact that the other person might have the entire lot, and the lot then became the sole property of the one not renouncing.

POWER TO MODIFY ALCALDE'S GRANTS.—The power vested in an Alcalde to grant lots implies the power to modify the grant, with the consent of all parties in interest, while the proceedings are *in fieri*, and so long as anything remains to be done by the granting power.

IDEM.—It was competent for one of the grantees of a lot made by an Alcalde to two persons, at any time before the proceedings were completed to decline the grant, and consent that the grant be made to his cograntee, and the Alcalde might then modify the grant by an indorsement thereon, making it inure to the benefit of such cograntee, and the title would then vest in him alone.

IDEM.—Such modification of an Alcalde's grant is not a transfer of title from one cograntee to another, but an exercise of the granting power.

PAROL TESTIMONY TO SHOW DECLINATION OF ALCALDE'S GRANT.—The fact that one of the cograntees in an Alcalde's grant, before the proceedings to vest title were completed, appeared before the Alcalde and consented to renounce his interest in the grant, and declined the same, and requested it to be made to the other cograntee, may be shown by parol testimony, provided the Alcalde has made such modification of the grant by an indorsement thereon. Such testimony may be rebutted by parol testimony on the other side tending to show that such were not the facts.

EVIDENCE AS TO ALCALDE'S GRANT.—Upon an issue as to whether an Alcalde's

grant was declined and renounced, evidence that at the alleged time the pueblo was a small place, and a renunciation of the lot could not well have transpired without a knowledge of the witnesses, is inadmissible.

ALCALDE CANNOT DIVEST TITLE.—When an Alcalde has made a grant to two persons jointly, and has delivered possession and completed the proceedings, the title vests in the two jointly, and an indorsement then made by the Alcalde on the grant, without the consent of the grantees, that one of them has renounced, and that the grant shall inure to the benefit of the other, does not divest the title of the one said to have renounced.

FINAL JUDGMENT BY SUPREME COURT.—Where there are controverted facts to be decided, the Supreme Court cannot direct a final judgment to be entered.

RECEIVING TESTIMONY OUT OF ITS ORDER.—The reception of testimony out of its proper order is a matter in the discretion of the Court which tries the case; and except in a case of manifest abuse of that discretion, the Appellate Court will not disturb the ruling of the lower Court in that respect.

RULING ON RECEPTION OF TESTIMONY.—If competent testimony is objected to because offered out of its order, and also for other reasons, and is ruled out by the Court, but the Court does not state for what reason, the presumption will be that the Court did not reject it because offered out of its order, but because incompetent, and the judgment will be reversed.

OFFER TO PROVE SEVERAL FACTS.—If an offer is made to prove several facts, consecutively stated, and it does not distinctly appear that the offer was to prove all the facts as a whole or none of them, the presumption is that it was an offer to prove each fact *seriatim.*

FINDINGS OF FACT.—Where there are no findings of fact the presumption is that the Court found all the facts necessary to support the judgment.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The facts are stated in the opinion of the Court and in the concurring opinion, and in the report of this case on the first trial, 30 Cal. 65.

*Eugene Lies*, for Appellants, argued that the certificate of Hinckley on the back of the grant was suspicious, as the grant followed a sworn petition, and the certificate narrated a renunciation; and as the grant asserted the official capacity of the grantor, while the certificate did not assert his official character.   That the grant was attested, but the certificate was not; and the grant followed old precedents, but the certificate had no precedent to follow.   He also argued that the testimony offered by defendants in rebuttal was relevant and important, and should have been admitted.   He further

argued that by the execution of the grant by Hinckley, even without a delivery, the title passed to Mesa and Diaz jointly, and that no certificate of the Alcalde could divest it.  He argued as follows as to the manner in which a renunciation should be made: I have consulted Escriche (*verb. Renuncia*) and Febrero, Chapter XXVII, Vol. 2, p. 249, *et seq.*, to little purpose, as might be expected, because these authors did not write for those parts of the Spanish empire where land was to be had for the asking, and where it sometimes happened that the grantee renounced his right.  All the light I can derive from these authors is, that renouncements resemble *cesiones*, and that the instruments to be drawn up in these cases should follow the general rules of conveyancing.  It stands to reason, however, that the evidence of renouncement should be of somewhat the same character as the evidence of the grant, *i. e.*, should be in writing, subscribed by the party renouncing, attested at least by two witnesses, if not also necessarily by a public officer acting as a notary. The archives in the Surveyor General's office contain a few instances of renouncement.  The party invariably proceeds by a sworn petition, *jurando lo necesario*.  His signature is not attested by witnesses, for the simple reason that it becomes a part of a series of writings called *expediente*, where the various successive official signatures answer, better than that of ordinary witnesses, the purpose of authenticating the first.  I have seen no instance of any renouncement not coupled with a petition for other lands.

*Haight & Temple*, and *Wm. M. Pierson*, for Respondent.

It seems to us that the title to one half the lot must still remain in the pueblo, if the Court should hold that it did not all pass to Diaz.  When Mesa refused to accept the grant, Hinckley evidently intended to give it to Diaz alone, and supposed he had done so by the certificate made upon it in the nature of a correction, or a note of an alteration in the original instrument.  But if the grant was made to

Mesa, then we contend that the facts establish a valid trans-
fer to Diaz. There was no Statute of Frauds under the
Spanish law, and parol transfers were valid. (*Hayes* v. *Bona*,
7 Cal. 159; *Mitchell* v. *Coxe*, 10 Mo. 262. See, also, *Mense*
v. *LeRoy*, 1 Cal. 220; *Panurd* v. *Jones*, 1 Cal. 508; *Merle* v.
*Matthews*, 26 Cal. 456.) The transfer was reduced to writ-
ing, though not signed by Mesa, was signed by the Alcalde
in his presence, and assented to by him, recited the con-
sideration, (payment of the fees,) and stated the fact that the
property belonged to Diaz.

By the Court, CROCKETT, J.:

This is an action to quiet title under section two hundred
and fifty-four of the Practice Act, and also to enjoin the
further prosecution by the defendants of an action for parti-
tion of the premises in controversy. The plaintiff deraigns
his title under Benito Diaz, one of the defendants, to whom
it is alleged the lot was granted by Alcalde Hinckley, in
1844. The defendants, except Diaz, are the heirs at law of
one Juan Prado Mesa, deceased, to whom they allege the
lot was granted jointly with Diaz, and from whom they claim
to have derived by inheritance the title to an undivided half
of said premises. Diaz failed to answer the complaint, and
his default was duly entered. On the first trial of the action
judgment was entered for the plaintiff, and the defendants
appealed to this Court. On the hearing of the appeal the
judgment was reversed and the cause remanded for a new
trial, (30 Cal. 65,) and on the second trial judgment was
again entered for the plaintiff, from which the defendants
have appealed. The proofs show that a few days before the
date of the grant, Diaz, on behalf of himself and Mesa, filed
with the Alcalde a written petition, soliciting that the lot be
granted to the two, jointly, "*en compania.*" A grant was
accordingly written out in due form and signed by the
Alcalde, which bears date July 19th, 1844, purporting on its

face to grant the lot to Diaz and Mesa jointly. If the proofs had shown nothing further, it would have been plain that whatever title was conveyed by the grant passed to the two grantees jointly. But the plaintiff claims to have established that, before the grant was delivered by the Alcalde, the two grantees appeared in person before him, and that Mesa then and there declined to accept the grant, and waived his pretensions to the lot in favor of Diaz, in which arrangement the Alcalde and Diaz acquiesced, and thereupon the latter paid the usual municipal fees and was put into possession; shortly after which he erected a house upon the lot, and he and those holding under him have ever since been in possession. In support of this theory the plaintiff put in evidence, against the objection of the defendants, a paper which was indorsed on the grant, and of which the following is a translation:

"Since the said Juan Prado Mesa renounced his right and property in the lot specified in this document, said lot may remain in the power of Don Benito Diaz, and as his property, for the uses which may be convenient, he having paid the municipal fees.

"Yerba Buena, 22d July, 1844.
　　　"(Signed,)　　　WILLIAM HINCKLEY."

This indorsement was proved to be in the handwriting of Hinckley, the Alcalde. Benito Diaz was put upon the stand by the plaintiff, and testified in substance that after the grant was written out and signed by the Alcalde, but before its delivery, Mesa became dissatisfied with the lot, because it was partially subject to inundation, and concluded not to accept the grant nor to pay any part of the municipal fees therefor; that in pursuance of this determination Mesa appeared jointly with Diaz before the Alcalde, and in the presence of the Alcalde verbally declined to accept the grant, and renounced all claim to the lot, and thereupon Diaz paid the fees, and the Alcalde having made the indorsement on

CAL. REPS. XXXVII—56

the grant quoted, delivered it to Diaz and put him in posses-
sion of the lot, and shortly thereafter Diaz inclosed the lot
and erected a house upon it, and he and his grantees have
ever since been in possession.

This testimony was objected to as incompetent, on the
ground that under the decision of this Court in *Donner* v.
*Palmer*, 31 Cal. 500, neither the actual delivery of the grant
nor the payment by the grantee of the municipal fees was
necessary to vest the title in Diaz and Mesa; and it is insisted
that the title under the grant having once vested, the certifi-
cate of the Alcalde indorsed on the grant is inoperative in
law to divest the title of Mesa, even though the facts were
precisely as testified to by Dias. In *Donner* v. *Palmer* we
said: "We understand that the title under the grant vests
the moment it has received the stamp of the last act required
to completely authenticate the instrument, and that a delivery
is not necessary. Suppose from any cause after the entry in
proper form of the proceedings in the book kept by the
Alcalde, he should fail to deliver the paper to which the
grantee is entitled under the regulations of 1789, could it be
claimed with any show of reason that thereby the grant was
defeated or made inoperative or void? We think not. If
not, it follows that no delivery of such a paper need be
shown." In respect to the payment of the municipal fees
as a condition precedent to the vesting of the title, we say in
that case: "We are satisfied that the payment of the tax
was a matter of no consequence so far as the validity of the
grant was concerned, and that the plaintiff was not bound to
prove that it was paid, nor were the defendants entitled to
prove that it was not."

But these propositions do not cover this case. If the grant
was made, signed, and recorded in due form by the Alcalde,
and nothing further appeared, it may be conceded, for the
purposes of this case, that the title vested in the grantees,
even though it should appear affirmatively that the paper
was not actually delivered to them, and that the fees were
not paid. But if the grantees immediately afterwards ap-

peared in person before the Alcalde and declined to accept it as made, and desired a modification of the grant, we know of no rule which prevented him from amending or adding to the record of his proceedings, so as to make them conform to the wishes of the parties. If the proceeding had been before the Governor, and if the two grantees, after the grant was signed and noted of record, and before acceptance, had gone before him and requested him to modify the grant so that it would inure to the benefit of one of the grantees only, and if he had accordingly, by a proper indorsement on the grant reciting the facts, have decreed that it should inure to one of them to the exclusion of the other, we apprehend it would be held to be a legitimate exercise of the granting power, and that it would be a valid and operative grant to the one grantee only. To hold the contrary would be to maintain that upon signing the grant and noting it of record, without any acceptance by the grantees, the Governor had exhausted his power over the subject; and even with the consent or on the request of the parties in interest, he could not, on the next day or at any future time, modify the grant in any particular whatever. However applicable so inflexible a rule might be to our system of granting the public domain, where the grant consists of a series of acts to be performed by several agents or officers, and all culminating in a patent to be issued by the President, we think it can have no application to the Mexican system, where the granting power was lodged solely in the Governor, or, in a certain class of cases, in subordinate officers, of whom the Alcalde was one, and who had an absolute discretion either to reject or accede to petitions for grants and to impose such conditions in respect to future improvements as the spirit of the colonization laws demanded.

The power to grant, lodged in a single officer, implies the power to modify the grant, with the consent of all the parties in interest, whilst the proceedings are *in fieri*, and so long as anything remains to be done by the granting power. The plaintiff claims that in this case something remained to be

done by the Alcalde when the grant was modified, to wit: to deliver the possession of the lot to the grantees; and that before the proceedings were complete Mesa declined to accept the grant and consented to its modification. In general, a party in whose favor a grant is made will be presumed to have accepted it, nothing appearing to the contrary. But if it affirmatively appears that he refused to accept it, we are not aware of any principle of law by which a title is thrust upon an unwilling grantee; and particularly where it is a pure donation, and no matter of contract is involved. We think, therefore, it was competent for Mesa, at any time before the proceedings were completed by delivering possession of the lot, to decline the bounty of the Government and to refuse to pay the municipal fees, and upon making that fact known to the Alcalde, and consenting that the lot should be granted to Diaz alone, it was competent for the Alcalde to modify the grant, as he is alleged to have done. His indorsement on the grant is, therefore, not to be treated as a transfer of title from Mesa to Diaz, but as an exercise of the granting power whereby he modified the grant, with the consent of Mesa,·who declined to accept it or to pay his portion of the municipal fees. If, therefore, the facts were conceded to be as testified to by Diaz, our conclusion would be that the title vested in Diaz alone, and that Mesa, at the time of his death, had no interest in or title to the lot. In the absence of findings, we must presume, in support of the judgment, that the Court below so found the facts, and that judgment was properly entered for the plaintiff, unless material errors occurred at the trial, which were properly presented on the motion for new trial.

On looking into the record, we find that after the plaintiff rested, the defendants introduced evidence and rested, and thereupon the plaintiff introduced evidence in rebuttal, after which the defendants offered to prove that the grant was made to Diaz and Mesa at the urgent solicitation and by the personal influence of Mesa; that possession of the lot was delivered to both; that the fact of their joint ownership was

notorious in the neighborhood; that Mesa, before he died, claimed to own one half the lot, and continued to claim it to the time of his death; that he assisted in building the house on the lot; that Yerba Buena was then a small place, and that Mesa could not well have renounced his title without the knowledge of the witnesses. This evidence was objected to as inadmissible and incompetent, and on the ground that it was in continuation of testimony offered by defendants on the same subject matter in rebuttal of the plaintiff's *prima facie* case. The Court ruled out the testimony; but on which of the grounds alleged does not appear.

That a portion of the testimony was competent we entertain no doubt. If it was true that the grant was made to the two jointly, at the urgent solicitation of Mesa, and that possession of the lot was delivered to the two jointly, and that Mesa assisted in building the house, and claimed, up to the time of his death, to be a joint owner with Diaz, it cannot be denied that these facts not only tended strongly to contradict Diaz, but also to show that Mesa never refused to accept the grant or agreed to renounce his claim to it; and it would further establish the important fact that the possession of the lot was delivered to the two jointly. Assuming these facts to be true, they would tend to show that the Alcalde exceeded his jurisdiction in attempting to divest Mesa, without his consent, of a title which had already become complete, by a formal execution of the grant and a delivery of the possession under it. But the plaintiff objects that the offer of the defendants was not only out of time, but was made as a whole, and that if any part of it was inadmissible, the Court properly denied the whole. It is always within the discretion of the Court which tries the cause whether testimony shall be admitted out of its proper order; and except in cases of a manifest abuse of its discretion, this Court will not disturb the ruling of the lower Court in that respect; and if it appeared in this case that the testimony offered by the defendants was out of its proper order and was rejected for that reason, we should not be inclined to set

aside the action of the District Court. But it does not appear from the record that the evidence was excluded on that ground, and we cannot assume that it was, nor are we satisfied that the offer was not made in time. Nor does it clearly appear that the offer was intended to be to prove all the facts included in the offer as a whole, and not each fact *seriatim.* Unless it distinctly appeared that the offer was to prove all the facts as a whole, or none of them, we should construe the offer liberally, and hold it to be an offer to prove each fact *seriatim;* and we so construe the offer in this case. We hold, therefore, that the Court erred in excluding the evidence referred to; that is to say, such portions thereof as we have indicated were admissible. But that portion of the offer which was to the effect that Yerba Buena was then a small place and that a renunciation of the lot by Mesa could not well have transpired without the knowledge of the witnesses, was properly rejected. Such evidence was too vague to be entitled to be considered.

The counsel have urged us, in view of the protracted and expensive litigation which has already occurred about this lot, to render a final judgment in the case, if practicable. But the result must depend on controverted facts which it is not our province to decide, and it is therefore impracticable for us to render a final judgment.

In order to avoid any possible misapprehension of our views of the law of the case, we repeat that if, on another trial, it shall appear to the satisfaction of the Court that after the grant to Diaz and Mesa was written and signed, but before delivery of the paper and before possession of the lot was delivered, Mesa and Diaz appeared in person before the Alcalde, and thereupon Mesa voluntarily refused to accept the grant, and consented that the title should inure to the exclusive benefit of Diaz, and if the Alcalde and Diaz acquiesced in this arrangement, and thereupon the Alcalde made the indorsement of the 22d July, 1844, on the grant, and placed Diaz in possession of the lot, the plaintiff will be entitled to judgment. On the other hand, if it shall appear

that Mesa did not appear before the Alcalde and refuse to accept the grant, and that possession of the lot was delivered to the two grantees jointly, or to one of them for the benefit of both, then the title under the grant vested in the two jointly, and the writing indorsed by the Alcalde on the grant was inoperative in law to divest the title of Mesa.

Judgment reversed and cause remanded for a new trial.

Mr. Chief Justice Sawyer delivered the following concurring opinion, in which Mr. Justice Sanderson concurred:

I agree that if the title to one half of the lot once vested by a valid grant in Juan Prado Mesa, there is nothing in this record to show that it subsequently passed from him. But the theory upon which the case was tried, and upon which judgment was rendered for the plaintiff, is, that the title never did vest in Mesa. To make a valid grant and vest the title in the grantee, there must, as in all other contracts, be a concurrence of the minds of both grantor and grantee; that is to say, the grantor must consent to make the grant, and the grantee consent to receive it. An acceptance is as essential as the concession. Ordinarily, doubtless, when nothing to the contrary appears, a party in whose favor a valuable grant has been made will be presumed to have accepted. In this case the plaintiff claims that the grant never was accepted by Mesa; and there is much oral testimony also favored by the condition of the written evidence of the grant, and consistent with it, to sustain the hypothesis. The brief memorandum in "Spanish Blotter B" that a grant had been made, is not the grant within the principle of *Donner* v. *Palmer*, 31 Cal. 500, or any other case decided by this Court. It is not the original proceeding (*las diligencias originales*) that were taken within the meaning of the provisions of section seventeen of the ordinances relating to the Town of Petic, of November 14th, 1789, (31 Cal. 508.) It is but a brief, unsigned memorandum of the result, without the petition, grant, or any of the other proceedings in

such cases; nor is it in substance, briefly stated, the grant itself.

It was, doubtless, admissible in evidence in connection with the other documentary and oral evidence, but it was not the grant itself. The entire proceeding, from the petition to the grant, inclusive, delivered to the parties, was introduced in evidence, and from this, it appears that Mesa did not sign the petition, and there is no evidence other than the act of Diaz in petitioning for Mesa as well as himself, that Mesa ever asked or desired the grant. And on the same title papers is indorsed by the Alcalde himself, who made the grant, in his own handwriting a statement as follows:

"Since the said Juan Prado Mesa renounced his right and property in the lot specified in this document, said lot may remain in the power of Don Benito Diaz, and as his property, for the uses which may be convenient, he having paid the municipal fees.

"Yerba Buena, 22d July, 1844.

"WILLIAM HINCKLEY."

The form of expression is Spanish, and if the indorsement was made, as contended by plaintiff, before the title papers and possession were given it would be simply, in substance, a declaration that Mesa declined to accept the grant. It also states that Diaz paid the fees. There is, it is true, a figure 4 written over a figure 5 in the date. Upon this there is considerable testimony to the effect that it is in the Alcalde's handwriting, and that the alteration was made before the papers were delivered, and that the whole transaction was, in fact, made before the delivery. Although there is some conflict in the testimony on this point, the quantity of the testimony is largely in favor of the facts as claimed by the plaintiff and found by the Court. Appellant makes a vigorous attack upon the quality and credibility of this testimony; but these matters are peculiarly within the province of the District Court to consider and determine. I do not refer

particularly to all the testimony on the other side bearing upon the point, and only to the character of plaintiff's testimony on the point to show that there is much testimony, in fact, tending to support his theory, and that the case is clearly one within the ordinary rule, that this Court will not nicely balance the testimony when there is a substantial conflict. I am fully satisfied that the judgment should not be disturbed on the ground of insufficiency of evidence to sustain it.

The only other questions, are, as to the ruling upon the admissibility of evidence in the progress of the trial, and on this branch of the case I am compelled to say I think there was a material error. The course of the trial was, perhaps, a little peculiar. The action is brought by the party in possession, under section two hundred fifty-four of the Practice Act, against parties setting up an adverse claim, to determine such adverse claim. The plaintiff, in his complaint, presents his case in two aspects. He alleges title derived through a grant from Alcalde Hinckley to one Benito Diaz, substantially in the manner shown by the written title delivered to the grantee, or grantees, afterward offered in evidence, and conveyances from Diaz. He, also, alleges his possession; that he entered into possession on the 5th day of February, 1848, under a conveyance from one Le Page; and that he has been in the actual, open, notorious, adverse possession ever since. He, also, alleges that the defendants set up a claim as heirs of Juan Prado Mesa to an undivided half of the premises, and are seeking a partition in another proceeding. He asks that their claim may be determined; that they may be adjudged to have no rights, etc. The defendants, in their answer, set up a grant from the Alcalde Hinckley to Diaz and Juan Prado Mesa, and deraign title to one half from Mesa. On the trial the plaintiff introduced evidence of his possession during the time alleged and rested, without presenting any evidence as to title under the grant alleged.

On the question of title under the grant, therefore, the
CAL. REPS. XXXVII—57

course pursued by plaintiff compelled the defendants to take the initiative, and the burden of proving affirmatively the title, set up in their answer, under said grant, was thrown upon them. This they did by introducing the memorandum in "Spanish Blotter B," and the petition and grant delivered, excepting the memorandum indorsed by Hinckley, apparently dated July 22d, 1844, and some evidence tending to show that Mesa had complied with the conditions by building a house within a year, and rested. This, of course, made out a *prima facie* case. The plaintiff then introduced the said memorandum of July 22d, 1844, indorsed on the grant, and followed it by a large amount of oral testimony, including that of Diaz himself, tending to show that the indorsement of this memorandum was made by the Alcalde in the presence of both Diaz and Mesa, with Mesa's consent, before the title papers were actually delivered; that Diaz alone was put in possession; that Mesa declined to pay the fees, and they were paid by Diaz alone; that Diaz alone fenced the lot and built the house; and as corroborative of the other acts, and in harmony with the theory claimed to be supported by them, that Mesa, during his life, never claimed the lot, etc., and rested.

The defendants then, in rebuttal, offered to prove by James Alexander Forbes, "and also by John Rose, one of the attesting witnesses to the original grant previously given in evidence, and W. J. Reynolds, the following facts : that the grant of the lot in question was made by William Hinckley, Alcalde, in 1844, to Juan Prado Mesa and Benito Diaz, at the urgent solicitation and by the personal influence of said Juan Prado Mesa; that possession of said lot was delivered to them both; that the fact of their joint ownership of that grant was notorious in Yerba Buena; that said Juan Prado Mesa, before he died, made statements asserting title to the undivided one half thereof; and that he rendered special assistance to the building of the house on that lot; and that he continued to claim the lot down to the time of his death; that Yerba Buena was then a small place,

and that renunciation of the lot could not well have transpired without some of those witnesses knowing of, and remembering it.   To all of which evidence so offered plaintiff's counsel objected, on the ground that the same is inadmissible and incompetent; that it is in continuation of testimony offered by defendants on the same subject matter rebutting plaintiff's *prima facie* case, and that the defendants cannot again go into rebutting evidence.   The Court sustained the objection, to which defendants then and there duly excepted."

This evidence was clearly competent and strictly in rebuttal.   It is not merely cumulative, but much of it was in reply to new matter introduced for the first time by plaintiff. The defendants, as to the title, really stood in the position of actors or plaintiffs, and not in that of defendants; they produced their title first; the plaintiff then produced his evidence of title, and the evidence now offered was strictly in rebuttal to the title so produced by plaintiff, and upon the very matters upon which the contest must, and did ultimately turn.   It was not only not necessary for defendants to have produced this evidence in the first instance, but it would have been out of the ordinary course of proceedings and improper to do so.   This was the first suitable and orderly opportunity to present it.

The plaintiff, by compelling the defendants to assume the initiative on the title, necessarily gave them the advantage of closing with rebutting testimony, so long as they confined themselves strictly to rebutting testimony and did not offer evidence merely cumulative.   There is a little of the testimony offered apparently cumulative, but that is more apparent than real.   The little evidence of this kind at first introduced by the defendants, when introduced, bore directly upon the performance of the express conditions of the grant, bearing directly upon the rights of Diaz and Mesa, as related to the grantor, not the rights of Mesa alone as related to his co-grantee.   The testimony of the plaintiff, however, was directed particularly to the question as affecting Mesa's

rights, as related to his co-grantee. And it was in this aspect of the case that testimony in some degree of a similar character became necessary, and assumed the character of strictly rebutting testimony.

I think the exclusion of this testimony was clearly error, and as it would bear upon the vital point in controversy, the judgment and order denying a new trial should be reversed, and a new trial granted.

Mr. Chief Justice SAWYER, on petition for rehearing, delivered the following opinion, in which Mr. Justice RHODES concurred:

Upon a further consideration, I find no occasion to modify the views expressed in my former opinion in this case. For the reasons then stated, as well as those contained in the opinion of my associate, Mr. Justice CROCKETT, I concur in the judgment.

[The opinion and first concurring opinion in this case were delivered at the October Term, 1868. The second concurring opinion was delivered at the April Term, 1869, after Mr. Justice SAWYER had become Chief Justice. Rehearing was denied.]