[Sac. No. 1875. In Bank.—November 15, 1912.]

J. R. FRASER, Respondent, v. G. M. SHELDON, and THE CARQUINEZ TRANSPORTATION COMPANY (a Corporation), Appellants.

APPEAL—ORDER DENYING NONSUIT.—An order denying a motion for a nonsuit is not an appealable order but may be reviewed on an appeal from the judgment.

ID.—APPEAL FROM JUDGMENT BY NEW METHOD—TIME FOR TAKING—FAILURE TO SERVE NOTICE OF ENTRY OF JUDGMENT.—An appeal from a judgment perfected under the provisions of section 941b of the Code of Civil Procedure is duly taken, when the notice of appeal was filed within six months after the date of entry of the judgment, but not within sixty days after said date, if no notice of the entry

of the judgment had been served on the appellants more than sixty days prior to the filing of the notice of appeal. If the record on appeal does not show that any notice of entry of judgment was served on the appellants, it must be assumed, in the absence of a showing to the contrary, that no such notice was served.

ID.—REVIEW OF EVIDENCE.—Upon an appeal so perfected any question may be reviewed, including the claim that the evidence does not sustain the findings, which could be reviewed upon an appeal taken pursuant to the provisions of section 939 of the Code of Civil Procedure, within sixty days of the rendition of the judgment.

ID.—BILL OF SALE GIVEN AS SECURITY—AGREEMENT TO RESELL—TITLE DOES NOT PASS.—A bill of sale of personal property executed for the purpose of securing an indebtedness due the apparent purchaser, with an agreement by the latter to resell the property to the apparent seller upon being paid the indebtedness, does not operate as a transfer of the title to the property.

ID.—ACTION FOR POSSESSION OF PERSONAL PROPERTY—FINDING NOT SUSTAINED BY EVIDENCE.—In an action to recover the possession of certain personal property, a finding that the plaintiff was the owner and entitled to the exclusive possession of the property involved, under a bill of sale and contracts with its prior owners, is held not to be supported by the evidence.

APPEAL from a judgment of the Superior Court of Solano County. A. J. Buckles, Judge.

The facts are stated in the opinion of the court.

H. W. Hutton, for Appellants.

George Clark, and T. T. C. Gregory, for Respondent.

THE COURT.—The complaint was filed on April 22, 1909, and the action is to recover possession of the value of certain personal property which plaintiff alleges in his complaint that he "is the owner of and entitled to the immediate and exclusive possession of,"—namely: "One twin screw boat called the Skimmer, formerly named the Fruitvale, including the pair of new Clifton engines upon said boat," and other described articles constituting her equipment; also two old barges and their equipment which, it is alleged, "lay on September 16, 1907, on the mud flat just below Benicia, California, at the old Delaney's Ways and Ship Yards"; also "one barge known as R. T. & C. Co. No. 1, including the

engine centrifugal pump used in or connected therewith,'' said scow being on September 16, 1907, ''anchored at Benicia.'' It is also alleged that, at the time of filing the complaint, all said property was in the possession of defendants and wrongfully withheld from plaintiff, and that ''the foregoing description is as accurate as plaintiff can give.'' A general demurrer to the complaint was overruled, as was also a demurrer that several causes of action had been improperly united.

Defendants answered by general denials of the averments of the complaint and also claiming ownership and right of possession in themselves then and at all times mentioned in the complaint. The cause was tried by the court and it made findings: 1. That the defendant company was a duly organized corporation; 2. That at the commencement of the action plaintiff ''was and he ever since has been the owner of and entitled to the immediate and exclusive possession of all the personal property mentioned in the complaint''; 3. That at the commencement of the action all said property ''was in the possession of defendants'' without right and was being wrongfully detained; 4. That prior to the trial of the action the possession of all said property, except the barge described as R. T. & C. Co. and its equipment had been delivered to plaintiff by the sheriff, and plaintiff retained such possession ''under proceedings duly and regularly had for that purpose in this cause''; 5. That the delivery of possession of the said barge last above particularly referred to and its equipment had not been made and was being withheld from plaintiff, and that the value of said property so withheld was five hundred dollars. As conclusion of law the court found that ''plaintiff is entitled to judgment against defendants for the possession of the personal property described in the complaint and if delivery of the personal property mentioned in finding 5 cannot be had, then in addition plaintiff shall have judgment against defendants for the value thereof amounting to five hundred dollars in lieu of said property, and costs of suit.'' Judgment was entered accordingly.

Defendants appeal ''from the judgment . . . entered . . . on the 25th day of February, 1910, and also from the order . . . denying defendants' motion for a nonsuit,'' on bill of exceptions.

The order denying defendants' motion for a nonsuit is not an appealable order. Such an order, however, can be reviewed on an appeal from the judgment.

While the notice of appeal from the judgment was not filed within sixty days from the date of entry of the judgment, it was filed within six months after said date, and the appeal was one perfected under the provisions of section 941b of the Code of Civil Procedure. It was duly taken within the time prescribed in said section, if no notice of the entry of said judgment had been served on appellants more than sixty days prior to such filing of the notice of appeal, the section providing substantially that such notice of appeal must be filed within sixty days after notice of entry of judgment has been served on the attorneys of record of the adverse party, and must, in any event, be filed not later than six months after such entry. If no notice of entry of judgment is so served, the party may file his notice of appeal at any time within six months from the date of such entry. The record here does not show that any notice of entry of judgment was served on appellants, and it must be assumed, in the absence of a showing to the contrary, that no such notice was served. (See *Foss* v. *Johnstone*, 158 Cal. 119, [110 Pac. 294].) Upon an appeal duly perfected pursuant to the provision of section 941b of the Code of Civil Procedure any question may be reviewed which could be reviewed upon an appeal taken, pursuant to the provisions of section 939 of the Code of Civil Procedure, within sixty days of the rendition of the judgment. (Code Civ. Proc., sec. 941c.) The claim that the evidence is not such as to sustain the findings of the trial court must, therefore, be considered.

Looking at the evidence in the light most favorable to plaintiff, as we must do in view of the findings of the court, the material facts appear to be as follows:

In the early part of the year 1907, two sisters, Mattie and Cherrie Bailey, were the owners of the personal property in question, and it was in charge of defendant Sheldon, their brother-in-law. It does not appear that any of the property was ever in the possession of plaintiff, and, as we understand the record, it was at all times prior to the organization of defendant corporation in the possession of Sheldon, as agent of the Bailey sisters. The boat originally named "Fruit-

vale" and now named "Skimmer" needed new engines and certain repairs, and plaintiff desired water transportation between Benicia, where he was engaged in business, and San Francisco. It was arranged between plaintiff and Sheldon, acting for the Baileys, that plaintiff should furnish the engine and other necessary things for the boat, and that a corporation to be known as the Rivers Transportation and Construction Company should be formed with a capital stock of seventy-five thousand shares, of which plaintiff should have twenty-five thousand shares for the money advanced, while the Baileys were to have the remaining fifty thousand shares. An instrument in the form of a bill of sale of the personal property was executed and delivered by the Baileys to plaintiff. It does not appear that plaintiff was ever given possession of any of the property. There is no conflict in the evidence on the proposition that the bill of sale was given and received solely as "security." Plaintiff furnished the engines and expended money for other purposes, including four hundred dollars for certain lands, the deeds to which were taken in his name, the aggregate amount of his bill being practically four thousand dollars. For some reason the original plan for the incorporation of a company was not carried out, but late in the year,—namely, on November 26, 1907, the attempted organization of defendant corporation was had. This was capitalized at fifty thousand dollars, and there were ten thousand shares. On September 16, 1907, a written agreement was entered into between plaintiff and Sheldon, whereby plaintiff agreed to convey to Sheldon the land purchased by him and all personal property here involved for four thousand dollars, ten dollars of which was paid at once, and $3,990 was to be paid one year thereafter, with interest. This amount Sheldon agreed to pay at the time specified. It was provided therein:

"The said party of the second part (Sheldon) is to have immediate possession, use and control of all the above described property and is to care for the same and pay all state, town and county taxes or liens of whatsoever nature which may become due on the property above described.

"In the event of a failure to comply with the terms hereof by the said party of the second part, the said party of the first part may be released from all obligations in law or equity

to convey said property, and the said party of the second part shall forfeit all right thereto, and all money theretofore paid thereon shall be considered as rent for the use of said property and for liquidated damages for the nonfulfillment hereof by the said party of the second part. And the said party of the first part, on receiving such payment, at the time and in the manner above mentioned, agrees to execute and deliver to the said party of the second part, or to his assigns, a good and sufficient deed and bill of sale conveying all of the above described property free and clear of all encumbrance made, done, or suffered by the said party of the first part.''

The agreement was signed by plaintiff and Sheldon. There is absolutely no evidence to the effect that the Baileys ever had any knowledge of the provisions of this agreement, and there was nothing to indicate any authorization on their part to Sheldon to enter into any such agreement. When the agreement was signed, plaintiff receipted as paid his bill against Miss Cherrie Bailey for the money due him, and gave it so receipted to Sheldon. In the early part of March, 1908, as we understand the record, he returned to Sheldon the bill of sale he had received from the Baileys, apparently surrendering all claim thereunder. Defendant Carquinez Transportation Company was in possession of the personal property at all times after its attempted incorporation November 26, 1907, operating the steamer from at least March, 1908, Sheldon being the general manager of said company. In the early part of 1908 it was orally agreed between plaintiff and those interested in defendant corporation that plaintiff would take one-third of the residue of the stock thereof after deducting six hundred shares sold to one Needham for one thousand dollars (one-third of which amount was paid to and accepted by plaintiff) in full satisfaction of his claim. According to the plaintiff's testimony he ''agreed that after that six hundred shares that was issued to Needham, that was to be deducted, and I was to have one-third of the balance.'' Stock was subsequently tendered him, but the claim was made that he was not being given the amount he was entitled to, and he refused to accept it, and declared the agreement at an end. The certificate for such stock is still being held for him. No part of the amount due under the agree-

ment of sale was ever paid in money, and this action was brought after the expiration of the time prescribed therein for such payment. The boat was enrolled at the custom house in San Francisco on March 16, 1908, plaintiff then certifying that he had built it in 1908 for the Carquinez Transportation Company. Plaintiff testified that it was to be enrolled in his name, but could not be as he was not a citizen of the United States.

The difference between the parties as to the stock was due to the fact that one thousand shares of the ten thousand were never issued, but were proposed to be retained as treasury stock. This left the total issue nine thousand shares, of which Needham was given six hundred for one thousand dollars cash, in which plaintiff participated by receiving his one-third. This left eight thousand four hundred shares to be divided among plaintiff and the two Baileys, each being entitled to two thousand eight hundred shares. This was the amount the tendered certificate represented. The plaintiff claimed that under his agreement he was entitled to one-third of *all* the capital stock provided for in the articles of incorporation, after deducting Needham's six hundred shares; in other words, that he should also have one-third of the one thousand shares treasury stock, which, of course, would entitle the two Baileys to the remaining two-thirds thereof, for it is clear that all the arrangements contemplated that plaintiff and each Bailey should be equal owners, each owning one-third.

It is respondent's theory that the bill of sale from the Baileys to him was absolute and not a mortgage; that although he had some negotiations with Sheldon and the Carquinez Transportation Company with a view to the acceptance of the stock for his interest in the property, and had even surrendered his bill of sale in contemplation of the completion of the transaction, nevertheless he had never become bound to take such stock; and that the contract between him and Sheldon had been accepted and recognized by the corporation which, through its president Frame, and its manager Sheldon, had urged him to procure the enrollment of the "Skimmer" as his own, but finding that impossible because he was an alien, had induced him to swear that he had built the vessel for the company. Respondent also insists that,

even assuming the bill of sale to be a mortgage, and assuming the transfer of their title by the Baileys to the corporation after the execution of that instrument, the superior court was justified in inferring that the corporation accepted the benefits of the promoter's contract and consented to what is termed "a common method of private foreclosure—a sale by the mortgagee with the mortgagor's consent." And finally respondent submits that his refusal to take security which was a mortgage in form, together with the absence of any evidence that the Baileys intended the bill of sale as a mortgage, justified the conclusion that title to the property had unqualifiedly passed to him to be properly asserted by him after the breach of the contract of sale to Sheldon. The first contention is without merit, because the respondent testified that he took the bill of sale as security. We quote some of the questions and his answers thereto as indicating how unqualified was his statement upon this point:

"Q. Isn't it a fact that this paper which you say was written was given to you simply as a guarantee for this $4,000? Is that right? It was given to you as security for this money which you paid for the machinery, and as security that it be carried out? A. Yes, sir.

"The Court: Q. It was given to you as security, that is what he asked you; do you understand it? A. Yes, sir. It was given to me as security.

"Q. For what? A. For what money that I advanced.

"Q. The four thousand dollars? A. Yes, sir."

Further answering a question propounded by his own counsel he said: "Mr. Sheldon offered to give me a mortgage also as security. He offered to give me a mortgage and I would not accept a mortgage; and then he gave me that bill of sale of the property, and then issued an agreement whereby I was to sell it back to him, when he paid me the full amount." Clearly such a contract, even though the plaintiff refused to take an agreement which was a mortgage in form, could not operate as a transfer of title to the property. (Civ. Code, secs. 2888 and 2889.)

Plaintiff's position that he was not bound to accept stock cannot be maintained, because the agreement by which he was to take such stock in lieu of his claim against the boats was partially executed by his acceptance of some of the money

received from Needham. At the very least he should have returned this money to the corporation before seeking to foreclose his lien, if he still had one. The same reasoning applies to respondent's other contentions. Even if the conduct of Sheldon and Frame amounted to a recognition by the corporation of the contract between Sheldon and himself, the subsequent acts of plaintiff in surrendering the bill of sale, the evidence of his lien, and in accepting the money received from the sale of stock, showed that he had abandoned all idea of enforcing that contract. So, too, any right of "private foreclosure" was cut off by the partially consummated exchange of all of plaintiff's interest for stock. And, finally, although there is no evidence that the Baileys executed the bill of sale as a mortgage, there is the plaintiff's own statement that he took it as security for the money he had advanced. This emphatically negatives his claim of unqualified title. We conclude, therefore, that the evidence was not sufficient to support the finding that the plaintiff was the owner and entitled to the exclusive immediate possession of the property involved.

This conclusion makes it unnecessary to indulge in more than a brief reference to other alleged errors. One of these related to the admission of parol evidence of the contents of the bill of sale, which was not in the custody of either of the defendants, but was, according to the affirmation of their counsel, in the possession of the Misses Bailey. Of course we need not review this matter at length, because in case of the necessity of procuring the document in the trial of this or any other action a new demand will become necessary and counsel will naturally take all proper means of producing the exhibit. Testimony given by plaintiff with reference to the value of one of the barges was also attacked as insufficient to justify the finding that it was worth five hundred dollars. In any view of the matter this testimony was far from satisfactory, and if it becomes necessary again to establish the value of the missing barge, doubtless testimony more ample will be adduced.

No other alleged errors require comment.

The judgment is reversed.

Rehearing denied.

Beatty, C. J., does not participate in the foregoing decision.