[Civ. No. 2376.   Fourth Appellate District.—July 22, 1940.]

DEMPSTER McKEE, Respondent, v. GEORGIA A. LYNCH et al., Executrix and Executor, etc., Appellants.

Wright, Monroe, Harden & Thomas for Appellants.

Hillyer & Boldman and Bertrand L. Comparet for Respondent.

GRIFFIN, J.—The plaintiff and respondent, an attorney at law, brought action on common count against Frank Lynch, claiming in the first count $2,500 for the reasonable value of services performed as such attorney, and in the second count for the further sum of $47.25 for moneys expended on behalf of the defendant. Subsequent to the filing of the complaint Frank Lynch died and the defendants and appellants were appointed as executrix and executor of his last will. Claim was duly presented and payment refused and the appellants were substituted as defendants in lieu of the deceased. The allegations of these facts are contained in a supplemental complaint and are admitted.

By way of answer defendants denied the allegations of indebtedness and alleged that Frank Lynch during his lifetime fully and completely discharged all obligations which he owed to the plaintiff for services. The action was tried before the court. A motion by defendants for a nonsuit was denied. Judgment was subsequently rendered against the estate of Frank Lynch, deceased, for the amount prayed for.

A motion for new trial was denied. Appeal is taken from the order denying the motion for nonsuit and from the judgment rendered.

Plaintiff and respondent had been employed by the decedent Frank Lynch and had acted as his attorney over a period of many years. On May 1st, 1936, respondent wrote to deceased a letter outlining the terms of his employment and the compensation which he was to receive. The letter read in part:

"Confirming our conversation of yesterday I submit the following as setting forth the terms of our arrangement commencing May 1, 1936:

"You are to pay me a retainer of $100.00 a month commencing May 1, 1936. This retainer is to cover miscellaneous office advice and the preparation of such instruments and documents as do not involve any unusual, extraordinary or complicated situations, for yourself and Mrs. Lynch concerning your business affairs in connection with both your strictly personal business and personal advice to you in connection with corporations in which you may be interested. For all services in court, or outside of the office, you are to pay at the rate of $100.00 a day. In addition you are to pay all expenses, including court costs, traveling expenses and miscellaneous expenses, such as telephone and telegraph bills. Hotel bills and living expenses out of the City shall be paid at the flat rate of $8.00 a day. With the above arrangement I will give such advice as may be necessary concerning the matters in which the Benson Lumber Company and the Benson Timber Company are involved and which are covered by the bill heretofore rendered to the Benson Lumber Company. Work done in connection with any other matters concerning either the Benson Lumber Company or the Benson Timber Company, or matters affecting affairs other than your own personal business, will be charged for at regular rates, or be subject to definite arrangements from time to time. . . . This arrangement is subject to being terminated at any time by either of us if it appears that the same is not satisfactory for any reason."

This letter was signed by respondent and approved by the deceased. Services were performed and payments made as therein specified. F. C. Lynch, the executor and appellant, is a nephew of Frank Lynch, deceased, and during the lifetime

of the latter, acted as agent for his uncle and had a general power of attorney. During the fall of 1937, a representative of the United States Government, a Mr. Looby, in a conference with the appellant F. C. Lynch, advised that the government would make a claim for a deficiency in connection with the income tax returns of decedent for the years of 1935 and 1936. This fact was discussed with the respondent and arrangements made for the performance of such legal services as might be called for in connection with the claim for deficiency. The arrangement made was contained in a letter written by the respondent to Frank Lynch under date of December 30, 1937, as follows:

"Frank tells me that there is some question in your mind as to whether or not there will be extra charges of fees covering services to be rendered by myself in connection with your income tax returns for 1935 and 1936. In order that this may be clarified to you, I am writing this letter. Frank and I have had several conferences with Mr. Looby of the Internal Revenue Department, with particular reference to your 1935 return, and as Frank no doubt informed you, Mr. Looby's report will probably reflect the question of additional taxes to be paid. This will no doubt necessitate a protest and possibly a hearing. I have, however, already considered the problems involved in the 1935 and 1936 returns, and there will be no other charges or fees, in addition to the retainer that you are paying me unless the work involves my absence from the city, attending hearings, or court proceedings, in which case my charge or fee will be at the rate of not to exceed $100.00 per day for services rendered and $8.00 per day for expenses, in addition to necessary traveling expenses."

The claim of the Government originally made was set forth in a report letter dated February 14, 1938. A tax deficiency of $4,298.32 was claimed for the calendar year of 1935. A protest of this claim was prepared by respondent. A hearing was had upon this protest in Los Angeles about April 4, 1938. On June 6, 1938, the Treasury Department issued its second report letter, this time claiming a deficiency of $184,-592.31 in income tax for the year 1935. As a result of this letter and of conferences between the respondent and Frank C. Lynch, a Mr. Jack C. Thompson was employed to assist respondent in computations and accounting work in order to

file protest to this claim. The services for which respondent seeks compensation are those alleged to have been rendered during the months of June and July, 1938, pertaining to this $184,592.31 deficiency.

There is evidence that respondent spent considerable time in this connection; that he investigated various legal questions; that he examined and considered a large number of documents relative to the transactions involved in the claims made by the Government, and that he directed and superintended the computation work done by Mr. Thompson. In the early part of August, 1938, the deceased and his nephew, F. C. Lynch, apparently determined to terminate the services of respondent without notice to him. Accordingly F. C. Lynch obtained from respondent the papers relative to the claimed deficiency and thereafter made a settlement with the United States Government for an amount in the neighborhood of $24,000. The record shows that during all of this period of time the retainer provided for in the letter of May 1, 1936, was paid and received by respondent. In connection with the protest and the hearing had in Los Angeles in April, 1938, payment therefor was made as provided for in the letter of December 30, 1937.

First, appellant argues and frankly concedes "that there was introduced at the trial sufficient evidence to support the court's finding that the work done by respondent during the months of June and July, 1938, was of a character that involved 'unusual, extraordinary or complicated situations', and also that evidence was introduced sufficient to support the implied finding of the trial court that the services were reasonably worth the amount for which judgment was given. Although these matters were disputed at the trial, evidence was offered by the respondent sufficient to support the court's findings. It is the claim of the appellants, and was at the trial, that these services were rendered by the respondent as an attorney at law, pursuant to the express terms of his written agreement, and that the agreement was never modified in any manner; that the compensation called for by the agreement was paid and received, and that therefore no additional compensation might be recovered."

At the close of the plaintiff's evidence the defendants moved for a nonsuit as to the first cause of action for payment for services, upon the ground that such services were

performed pursuant to the terms of a written contract which expressly set forth the compensation to be paid; that the undisputed evidence showed that such compensation had been paid, and that the evidence failed to establish any alteration, change or modification of that written contract. This motion was denied and the appellants assigned such order as error.

Secondly, it is contended that certain questions of evidence arose at the trial, and appellants claim that the court's rulings with reference thereto were erroneous. During the lifetime of Frank Lynch the deposition of the plaintiff was taken under the provisions of section 2055 of the Code of Civil Procedure. This deposition was filed in the regular manner. Thereafter Frank Lynch died and the representatives were substituted. At the trial appellants objected to the testimony of respondent on the ground that he was disqualified as a witness under subdivision 3, section 1880, of the Code of Civil Procedure. Thereupon the plaintiff offered in evidence the deposition taken during the lifetime of Frank Lynch. This was objected to in its entirety on the ground that the plaintiff was disqualified as a witness under that section and the order of the court overruling such objection and admitting the deposition was assigned as error.

Thirdly, appellants assign as error certain rulings of the court with respect to admissions of certain testimony contained in the deposition and these specified objections will be discussed later.

Fourthly, objection is also made to certain testimony offered by Jack C. Thompson on the ground that he was likewise disqualified under subdivision 3 of section 1880 of the Code of Civil Procedure on the theory that he was under the classification of an assignor, and the order of the court overruling such objection and admitting the testimony is likewise assigned as error.

Fifthly, as to the second cause of action the appellant likewise concedes "that there is evidence sufficient to support the finding of the court that this amount is owed" but claims that this portion of the judgment cannot be supported if they are correct in their contention with respect to the admissibility of the deposition in evidence and as to the testimony of Jack C. Thompson, the claimed assignor, in regard to this cause of action.

In support of the first point appellant claims that the written contract contains specific provisions for respondent's compensation and therefore he may not recover additional compensation for such services in the absence of abandonment or express modification of the contract of employment, and argues that under the first agreement of May 1, 1936, the provision that ''You are to pay me a retainer of $100.00 a month commencing May 1, 1936. This retainer is to cover miscellaneous office advice and the preparation of such instruments and documents as do not involve any unusual, extraordinary or complicated situations . . . '', would leave the question open as to whether the services performed were in the accepted category and therefore a finding by the trial court on the subject would not be disturbed on appeal, but claims that the second letter of December 30, 1937, forecloses any such interpretation as would permit an allowance for any service in relation to the 1935 and 1936 returns. They argue further that ordinarily a client, having arranged for a stated compensation, is entitled to rest upon that contract and is entitled to assume that the stated compensaion is all that will be required and that if an additional compensation is to be sought, the client should have the right to determine whether he desires to continue the employment of the attorney under such new arrangement and that no additional compensation may be charged after the transaction has terminated, citing 6 Corpus Juris, pages 738 and 739; *Reynolds* v. *Sorosis Fruit Co.*, 133 Cal. 625 [66 Pac. 21]; *Lindsay* v. *Carpenter*, 90 Iowa, 529 [58 N. W. 900]; *Payne* v. *Davis County*, 150 Iowa, 597 [129 N. W. 823]; secs. 1661, 1698, Civ. Code; *Columbia Cas. Co.* v. *Lewis*, 14 Cal. App. (2d) 64 [57 Pac. (2d) 1010]; *Pearsall* v. *Henry*, 153 Cal. 314 [95 Pac. 154]. We see no conflict with the rules of law set forth in the cited cases and the rules of law applicable to the facts in the instant case. In an opinion of the trial court printed in the respondent's brief that court thoroughly discussed the facts in evidence and presented a conclusion which we adopt in reference to this particular point raised by appellants. A portion of that discussion is as follows:

''Now to what extent is that contract (of May 1, 1936) affected or influenced by the letter dated December 30, 1937, signed by the plaintiff here addressed to Mr. Frank Lynch?

"I do not consider that letter . . . any modification, or I do not consider it any part of the contract whatever, but just what it purports to be, a statement to Mr. Frank Lynch that what he had been discussing with the attorney in fact for Mr. Frank Lynch and with Mr. Looby of the Internal Revenue Department did fall within the provisions of the ordinary retainer and not the excepted clause of waiver. Mr. McKee in that letter does not say 'I will handle any claim that the Government may make against you for deficiencies in your Internal Revenue tax now and hereafter until this contract is cancelled by either or both of us'; . . . He is writing with reference to a well known situation, known to Frank C. Lynch and known to him. Apparently Mr. Frank Lynch the client was wondering if his contract for the retainer with Mr. McKee covered the situation they were then discussing, or then considering; . . . Mr. McKee writes:

" 'Frank and I have had several conferences with Mr. Looby of the Internal Revenue Department, with particular reference to your 1935 return, and as Frank no doubt informed you, Mr. Looby's report will probably reflect the question of additional taxes to be paid.' Now they knew at that time that there was going to be demand by the Government and they knew it would probably be in the nature of $4000, which the original demand was, and Mr. McKee had an idea what he would have to do, he says:

" 'This will no doubt necessitate a protest and possibly a hearing,' but he says he already has considered the problems involved. Now that is what he is writing about, those problems which he has considered and which had been discussed with Mr. Looby and which were no doubt embraced in the first demand of the Government which they anticipated at the time Mr. McKee wrote this letter; . . . then he goes on to interpret the contract, not to modify it nor to create a novation. He says:

" 'There will be no other charges or fees, in addition to the retainer that you are paying me, unless the work involves my absence from the city,' and so on. He didn't expect there would be very much to it so he decided that it didn't fall within the excepted clause of work set out in his letter of May 1st, which constituted the terms of the contract when approved by Mr. Frank Lynch. Mr. McKee

evidently did not consider the matters that he had been discussing with Mr. Looby and Mr. F. C. Lynch fell within the class of those services which were or would be unusual, extraordinary or complicated. . . . The minds of the parties met on those things that had been discussed with Mr. Looby, the minds of the parties met on those things which Mr. McKee had examined in the 1935 and 1936 returns because those are the things that he was . . . writing about in his letter . . . he doesn't regard them as extraordinary. Then along comes the Government, . . . they certainly make a drive on Frank Lynch and want a whole lot of money—one hundred and eighty odd thousand dollars. Now is a demand for one hundred and eighty odd thousand dollars by the Federal Government and a resistance of that demand and the labor that it entailed as disclosed here ordinary, unusual, and not complicated? I don't think we could say so. An entirely different situation from that which the parties had in mind or could reasonably have had in mind at the time defendant's exhibit B (letter of December 30, 1937) was written. I do not think it is reasonable . . . to hold Mr. McKee bound to do all this work and labor for One Hundred dollars a month; I don't think he ever intended to and I don't think Mr. Lynch ever intended him to do that.

"So the court will hold that defendant's Exhibit B is an interpretation of defendant's Exhibit A (letter of May 1st, 1936) with reference to the matters that had been discussed and considered by Mr. Frank Lynch through his Attorney in Fact, Mr. F. C. Lynch, and which had been discussed with Mr. Looby and which resulted in the first demand of the Government for approximately $4,000.00. . . .

"To . . . consider whether or not the services actually rendered by Mr. McKee are extraordinary, unusual and complicated—there can be no doubt they are; the court finds they are on the testimony here contained in the deposition of Mr. McKee and upon the testimony of Mr. J. C. Thompson, upon the testimony of Mr. Frank C. Lynch, on the testimony of Mr. Conlin. . . .

"Now what are the services of Mr. McKee worth and how should the services of a lawyer be measured? . . . We have the testimony of Mr. Curtis Hillyer that Mr. McKee's services were worth $8,000.00 in this matter . . . there was a pretty good settlement worked out; . . .

"Anybody that has the Federal Government threatening him with execution for $186,000.00 needs a lawyer mighty bad. There is nothing simple about that ordinarily. . . .

"He took hold of the situation and labored on it, got a good result, or at least a good result was obtained and I cannot help but feel that he contributed to it materially, perhaps to a controlling extent; he certainly would have finished it were it not for the fact the papers were taken from him by Mr. Frank Lynch, and he was dismissed, by inference, and so I think that the demand in the prayer of the plaintiff's complaint is modest as to the first count . . . "

It is therefore quite apparent that the trial court did not consider the letters as a contract to cover any and all services to be performed, whether anticipated or not, in reference to the income taxes. The parties were contracting in respect to the matters which were then (December 30, 1937) known to them. This conclusion receives support in a report letter of the Treasury Department dated June 6, 1938, written to Mr. Frank Lynch, wherein it is stated:

"Your protest against the findings of a revenue agent's report in connection with your income tax liability for the year 1935 has been given careful consideraion by this office.

"As a result of your protest, a further investigation was made and you will find enclosed a copy of revenue agent's supplemental report setting forth his recommendations on the issues raised, from which you will note that additional information has been obtained making necessary further income adjustments with an increase in the deficiency proposed. . . . "

It is therefore apparent that this report letter was based on new facts or new issues, and in effect was an entirely new and different problem from the one before suggested. The government asserted entirely new, different, unheard-of, uncontemplated, and unknown claims in the second report letter, which claims were not known either to the taxpayer, Frank Lynch, or to the respondent or to Mr. F. C. Lynch, at the time of the writing of the December 30th letter. Being unknown, they could not have been referred to therein, nor were they apparently considered by the parties in connection therewith.

The contract specifically provides: "Work done in connection with any other matters concerning either the Benson

Lumber Company or the Benson Timber Company, or matters affecting affairs other than your own personal business, *will be charged for at regular rates, or* be subject to definite arrangements from time to time.'' (Italics ours.) Section 1648 of the Civil Code provides: ''However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract.'' (See, also, secs. 1580, 1647, Civ. Code.)

We are not prepared to declare that the construction given by the trial court to the entire transaction is an unreasonable construction or that it is untenable or so clearly inconsistent with the intent of the parties as disclosed by their language that we must substitute therefor the interpretation for which appellants contend. In such a situation it is settled that a reviewing court is not justified in disturbing the construction adopted by the trial court (*Whepley Oil Co.* v. *Associated Oil Co.*, 6 Cal. App. (2d) 94 [44 Pac. (2d) 670]; *Shelley* v. *Byers*, 73 Cal. App. 44, 55 [238 Pac. 177].) ■ It has long been the rule that when parties have not incorporated into an instrument all of the terms of their contract evidence is admissible to prove the existence of a separate oral agreement as to any matter on which the document is silent and which is not inconsistent with its terms (*Buckner* v. *A. Leon & Co.*, 204 Cal. 225 [267 Pac. 693]; *Lewis Pub. Co.* v. *Henderson*, 103 Cal. App. 425 [284 Pac. 713]; *Kellogg* v. *Snell*, 93 Cal. App. 717 [270 Pac. 232].)

■ As to the second contention in reference to the admissibility of respondent's deposition in evidence, appellants cite many cases from other states supporting their claim that the deposition was not admissible (*Boyd* v. *Gore*, 143 Wis. 531 [128 N. W. 68, 21 Ann. Cas. 1263], and cases cited; *Smith* v. *Billings*, 177 Ill. 446 [53 N. E. 81]; *Greenlee* v. *Mosnat*, 136 Iowa, 639 [111 N. W. 996, 14 L. R. A. (N. S.) 488]); and claim that *Rose* v. *Southern Trust Co.*, 178 Cal. 580 [174 Pac. 28], *Mitchell* v. *Haggenmeyer*, 51 Cal. 108, *Pelton* v. *Andrews*, 24 Cal. App. (2d) 124 [74 Pac. (2d) 528], *Deacon* v. *Bryans*, 88 Cal. App. 322 [263 Pac. 371], *Davis* v. *Mitchell*, 108 Cal. App. 43 [290 Pac. 887], *McClenahan* v. *Keyes*, 188 Cal. 574 [206 Pac. 454], and *Hussey* v. *Loeb*, 60 Cal. App. 469 [213 Pac. 271], are to the same effect.

The holding in *Kay* v. *Laventhal*, 78 Cal. App. 293 [248 Pac. 555], is directly in point under the facts in the instant

case. We need but quote from the syllabus to show its applicability to the facts here presented: "In such action, where after defendants were served with summons they caused the deposition of plaintiff to be taken, such deposition was admissible as evidence on behalf of plaintiff, notwithstanding at the time of trial one of the defendants had died and the action stood as one against his estate." (Hearing denied by the Supreme Court.)

Appellants admit that "so far as we have been able to ascertain, this decision is the last expression on the subject by the courts in this state. We believe we can demonstrate that it is not the law, and should be overruled". The same argument on the point here involved was quite thoroughly presented to the court in *Kay* v. *Laventhal, supra*. In the petition for hearing in the Supreme Court, pages, 8, 9, 10, and part of 11, were devoted to a thorough exposition of this same contention and some of the same authorities were cited by the petitioner. We find no reason to reach a conclusion contrary to the one there expressed and particularly so when a hearing has been denied by the Supreme Court.

■ Appellants' third claim of error arose upon the introduction of respondent's deposition in evidence. They moved to strike the answers to the following questions on the ground that they attempted to modify a written contract by parol:

"Q. Did you make any arrangements other than those set forth in the letter of May of 1936 and the letter of December 30, 1937? A. Yes. Q. What were those arrangements? A. If there were any unusual or complicated or extraordinary services, why there would be bills rendered, depending upon what the services were and what they were worth."

For the reasons heretofore expressed the motion was properly denied. ■ Objection was made to reading the following question in the deposition of respondent on the ground that no foundation had been laid, that is, that there had been no previous showing that respondent had been employed by the deceased: "Q. What services did you render for and on behalf of Frank Lynch for which you claim compensation in the action?" The order of proof rests within the sound discretion of the trial court (*Lick* v. *Diaz*, 37 Cal. 437). The objection was properly overruled.

■ As to the fourth and fifth claimed errors, it should be noted that the second cause of action is based upon a claimed

advance of $45 paid by respondent to J. C. Thompson for three days' services performed by him in assisting with the disputed claims. This employment and payment were in accordance with an agreement with F. C. Lynch that respondent would be reimbursed by Mr. Lynch. It is appellants' theory that "respondent, by the payment to Mr. Thompson or advancement of money to him, became subrogated to the claim of Thompson against the estate. Thompson therefore was in the position of one whose claim had been assigned", under subdivision 3 of section 1880 of the Code of Civil Procedure, which prohibits the parties to an action as well as their assignors from testifying in an action on a claim against the estate of a deceased. Respondent's cause of action for $45, which sum he paid to Thompson, is not derived from assignment or subrogation of another's rights, but to the contrary, is an independent right of his own, created by the fact of his having made the payment, at the request of and for the benefit of appellants testator, to Thompson, under which respondent was entitled to have repaid to him the sum he so advanced. (*Badover* v. *Guaranty Trust & Sav. Bank,* 186 Cal. 775 [200 Pac. 638]; 17 Cal. Jur. 587.) He was not an assignor within the meaning of subdivision 3 of section 1880 of the Code of Civil Procedure.

An order denying a motion for nonsuit is not an appealable order but may be reviewed on the appeal from the judgment. (*Leavens* v. *Pinkham & McKevitt,* 164 Cal. 242 [128 Pac. 399]; *Fraser* v. *Sheldon et al.,* 164 Cal. 165 [128 Pac. 33].) The attempted appeal from this order is dismissed. What we have said in reviewing the appeal from the judgment sufficiently disposes of all the points made in regard to the denial of the motion for a nonsuit.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 19, 1940. Edmonds, J., voted for a hearing.