[Civ. No. 8361.   Third Dist.   Apr. 9, 1954.]

WILLIAM W. McCREARY et al., Respondents, v. MER-
CURY LUMBER DISTRIBUTORS, Appellant.

Joseph G. Babich for Appellant.

Spur & Brunner for Respondents.

SCHOTTKY, J.—This is an appeal from a judgment holding that a timber contract between the parties had been rescinded and quieting title to the real property involved.

The appellant is the K. D. Lumber Company, sued as and doing business under the name of Mercury Lumber Distributors. Appellant was the only party defendant to answer or appear at the trial.

Appellant outlines its contentions on appeal as follows:

"It is appellants' position that the uncontradicted evidence of all parties was that the contract of September 27, 1950 was not terminated and cancelled by mutual agreement, which was the gravamen of the complaint, and that the contract of September 27, 1950 could not be modified, altered, or enlarged by parol evidence so as to create a time limit within which the downed timber had to be removed; and that it was not in default in payments for timber removed and that even if there had been a time limit for the removal of downed timber that any default could be compensated for in damages and did not justify a rescission."

Before discussing these contentions we shall summarize briefly the evidence as shown by the record, bearing in mind the familiar rule that all conflicts in the evidence must be resolved in favor of the prevailing party.

On September 27, 1950, appellant and respondents entered into a written agreement for the purchase, by the former from the latter, of the merchantable fir and pine timber on said lands of respondents. This included, in addition to growing timber, some logs and tops from trees felled during previous logging operations on the land and allowed to remain there. The contract was prepared by appellant and omits provisions usually contained in such contracts for the protection of the seller. The contract provides for the purchase and sale, describes the lands, defines the term "merchantable timber," specifies a purchase price of $2.00 per thousand board feet "on all logs to be felled," and $1.00 per thousand for usable timber previously felled (usability to be determined by appellant), provides that a Spaulding's loggers' scale shall be used in making measurements, provides that payments (based on footage determined by mill scale) are to be made by appellant on the 5th and 20th days of each month for timber removed during the preceding half-month, provides for rights-of-way for appellant's operations, and requires appellant to carry workmen's compensation and other insurance on its operations, at no cost to respondents.

The contract is silent regarding the time within which appellant was to remove the timber (either the standing or downed timber), and this time factor provides one of the chief points of contention between the parties. There is the usual conflict in the evidence as to what was said. Mr. McCreary testified that during negotiations for the contract he told appellant's representatives, Mr. Howard and Mr. Olson, that he wanted the downed timber removed as soon as possible because it would "go bad," and that they said they would take it out as soon as they possibly could. His testimony also shows that the removal of the downed timber was one of his main reasons for entering into the contract. Mrs. McCreary was present and heard this conversation and she confirmed her husband's testimony that Howard and Olson promised to get the downed timber out as soon as they could. She testified that respondents understood this to mean that this timber would be removed right away, within the next year (1951) at least, and she also testified that the price for the downed timber was fixed at $1.00 per thousand because respondents wanted to get rid of it soon. According to Mr. McCreary, the time required to remove the standing timber was also discussed and it was estimated that it would take about two years. Both Howard and Olson testified that they

told Mr. McCreary that they had other timber to get out first, and that they would take his out when they could get to it. Both denied that any specific time was agreed upon or even mentioned. Howard admitted that he discussed the matter of spoilage (of the downed timber) with McCreary at the time, but explained that the timber had already been down for two or three years, that the fir would not deteriorate much if it took a little longer to get it out, and that the pine was already blue and unmerchantable. Olson, also, testified that the pine logs had started to blue. This was controverted by Mrs. McCreary who testified that the downed timber had been cut the previous year (1949), and by Vernon Miller who logged part of respondents' land for appellant and who testified that the downed timber was still good in October, 1951, but was unmerchantable in the spring of 1952. Howard was appellant's general manager, and Olson was the manager of appellant's local sawmill at the time.

The record shows that appellant did not commence logging operations under the contract until July, 1951, although operations could have been conducted for 30 to 60 days during the remainder of the 1950 season and although appellant started operations on government land as early as May, 1951. The testimony is not entirely clear, but it appears that this government tract was adjacent to lands covered by the contract and that appellant intended to move from the one tract onto the other, logging as it went. The boundary between the two tracts was in dispute and appellant discontinued operations there, apparently after it had taken approximately 67,000 board feet of logs out of the disputed strip. Appellant did not do the actual logging, but instead had it done by a contract logger. Logging operations under the contract were stopped sometime after their commencement in July, and were not resumed until mid-October, 1951, when Vernon Miller went onto the property and logged it for about three weeks. Guy McCloud, who was appellant's millwright at the mill, testified that Miller took out a total of 288,000 board feet from respondents' property. Inasmuch as Howard estimated that the total amount taken out under the contract was 200,000 to 250,000 board feet, the July operation could not have been very productive. The amount of timber left to be removed was variously estimated at over a million board feet by Howard, and at a million and a half to two million by Miller. Howard thought that it would take appellant two years to remove it.

Miller quit logging, after three weeks, because he was not being paid. It appears from Howard's testimony that appellant's sawmill was being operated by Lou Azrow and that it was Azrow who was supposed to pay Miller for the logging. In any event, the logging operations stopped in early November and Miller's equipment lay idle on the property for five weeks before it was removed. Miller testified that there was good weather for at least 30 days while the equipment was idle and that he could have taken out more than 100,000 board feet of logs each week. Appellant's sawmill had a capacity of between 15,000 and 20,000 feet, log measure, per day.

Respondents became dissatisfied with appellant's performance, and early in December, 1951, they sought to rescind the contract and they also locked the gate across the road leading into the timber land. A letter of rescission dated December 3, 1951, was prepared by respondents' attorneys, and presumably was mailed to appellant at an Oroville, California, address. A copy of the letter was put into evidence (plaintiffs' Exhibit 2) and it claims, as grounds for rescission, appellant's delay in removing the timber and its failure to make payments as required by the contract. Apparently, appellant did not receive the letter, but Howard and McCloud were told about it, and were shown a copy during a conference held in the office of respondents' attorneys on December 11th. There is evidence that appellant was in default in its payments, and on December 12, 1951, it paid up the unpaid balance of $85.65, taking respondents' receipt showing payment in full (defendant's Exhibit A). There is evidence that appellant made a tender of payment for the timber cut on the disputed strip, but Mr. McCreary refused it. The locking of the gate took place prior to the conference of December 11th.

Sometime prior to the December 11th conference, Howard and McCloud negotiated with Mr. McCreary either for a new contract or a modification of the old one. It is not entirely clear from the record just what was said or done, or when. It appears, however, that Mr. McCreary wanted a time limit for the removal of the timber, and that Howard and McCloud were willing to agree to a two-year limitation, with an option for a third year if necessary. The latter also wanted to purchase an additional 40 acres of timber from respondents at a price of $4.00 per thousand board feet. Howard testified that an agreement was reached and that he made notes of the terms and gave them to Mr. McCreary so that the latter

could have a written contract prepared. This was substantially confirmed by McCloud's testimony. Howard's memorandum is in evidence and shows the time limitation and the purchase of timber in section 19 (additional timber) at a price of $4.00 per thousand. Thereafter, the parties had the conference of December 11th in the office of respondents' attorney, Mr. Spur. Mr. Spur testified that the parties told him, in effect, that they had negotiated a new agreement and wanted it prepared. They had Howard's notes with them, and during the discussion Mr. Spur wrote the figure "5$^{00}$" and the figures and words "4 or 5 culverts," which now appear on the memorandum. Mr. Spur also testified that the parties were not in agreement as to one item, i.e., the amount of the down payment. The attorney prepared a new contract (defendant's Exhibit B) which was never executed on behalf of appellant. Howard and McCloud called it unreasonable, unsatisfactory, and "too stiff," and they pointed to the provisions requiring road maintenance and culverts. Apparently they did not object to the recital that the old contract was terminated, nor did they raise any question of lack of authority on their part to negotiate for a new contract.

Respondents filed their complaint on January 24, 1952, seeking a judgment declaring the old contract terminated and also quieting title to the real property involved. Appellant answered and, by way of cross-complaint for declaratory relief, asked the court to construe the old contract.

The case was tried by the court sitting without a jury. The court found that the written contract was executed by the parties; that one of the primary considerations prompting plaintiffs to execute the written agreement was their desire to have the timber on the property felled and removed therefrom as soon as possible; that it was so agreed by the parties; and that time was of the essence of the agreement as regards the felling and removal of the timber.

The court found further that the defendant did not commence any substantial logging operations upon the hereinabove described real property until the month of July, 1951; that thereafter defendant logged spasmodically upon said real property, removing a total of not to exceed 200,000 feet of logs from said real property, until about November 1, 1951, when defendant ceased its logging operations upon said real property; that defendant did not resume logging operations upon said real property after it ceased logging in November,

1951; and that weather and other conditions were such that defendant could have continued its logging operations upon said real property for four or five weeks after it ceased such operations in November, 1951; and that it was reasonably possible for defendant, by logging with reasonable diligence at all reasonable times with the logging equipment at its disposal, to have logged and removed all, or practically all, of the timber from the hereinabove described premises before December 1, 1951, but that defendant failed so to do.

The court found further that defendant failed to pay plaintiffs as provided in the agreement for all logs removed from the premises and was indebted to plaintiffs in the amount of $97 on December 12, 1951; and the court found finally that sometime between December 1, 1951, and December 11, 1951, plaintiffs, by reason of the failure of defendant to pay said sum of $97 owing by defendant to plaintiffs for logs removed from said real property under and pursuant to the written agreement, and by reason of the failure of defendant to log and remove the timber and logs from the hereinabove described real property as quickly as was reasonably possible after date of execution of said written agreement, repudiated said written agreement, and rescinded the same, and gave to defendant notice of such rescission, and locked the gate in the fence around the real property hereinabove described and denied defendant access to said property and to the logs and timber thereon; that defendant, with full knowledge of said repudiation and rescission of said written agreement by plaintiffs, acquiesced in said repudiation and rescission; and that it was mutually agreed by and between plaintiffs and defendant that said written agreement be rescinded and abandoned.

Judgment was entered in accordance with said finding quieting respondents' title against any claim of appellant in or to said real property and declaring the agreement of September 27, 1950, to be "terminated, cancelled, annulled and rescinded." Appellant's motion for a new trial was denied and this appeal followed.

Appellant first contends that the uncontradicted evidence shows that the contract of September 27, 1950, was not terminated and cancelled by mutual agreement, and appellant argues that that was the theory on which the case was tried. Appellant points to testimony of Mr. McCreary, on cross-examination, where he stated that he guessed the old contract would remain in force until the new one was signed, to testi-

mony of Howard that he never agreed to cancel or terminate the old contract, to testimony of McCloud that he never had instructions or authority to terminate the old contract or negotiate a new one, and to the testimony of appellant's president that no one was ever authorized to agree to the termination of the old contract. Howard's and McCloud's testimony, however, shows that they did negotiate with Mr. McCreary for a new contract, and Howard stated specifically that an agreement had been reached and that he made notes covering the terms. At most, appellant's argument points up a conflict in the evidence, which conflict was resolved by the trial court in respondents' favor. ■ On appeal, all conflicts in the evidence must be resolved in favor of the respondents and all legitimate and reasonable inferences indulged in to uphold the findings, if possible. (*Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689].) ■ Howard was appellant's general manager and had negotiated with Mr. McCreary for the original contract. Appellant approved Howard's agency in that instance by accepting the contract, and thereby established Howard's ostensible authority to negotiate for a new one. (*County First Nat. Bank* v. *Coast D. & L. Co.,* 46 Cal.App.2d 355, 366 [115 P.2d 988]; Civ. Code, § 2317.) Appellant cannot now be heard to say that Howard exceeded his actual authority.

Appellant contends also that the contract of September 27, 1950, was not subject to termination or cancellation even if appellant was in default, because of the absence of provisions in the agreement for forfeiture in the event of default and making time of the essence. Appellant cites as error the trial court's acceptance of parol evidence as to representations made on the subject by the negotiating parties. The contract itself is the agreement, says appellant, and is neither uncertain nor ambiguous regarding the removal time because it contains no provision covering it. Appellant concludes that extrinsic evidence is therefore inadmissible to create a removal time. ■ However, there can be no doubt as to the rule that when parties have not incorporated into an instrument all of the terms of their contract, evidence is admissible to prove the existence of a separate oral agreement as to any matter on which the document itself is silent and which is not inconsistent with its terms. (*McKee* v. *Lynch,* 40 Cal.App.2d 216, 226 [104 P.2d 675]; *Buckner* v. *Leon & Co.,* 204 Cal. 225, 227 [267 P. 693].) *Anderson* v. *Palladine,* 39 Cal.App. 256 [178 P. 553], cited by appellant as authority

for its contention that parol evidence was inadmissible to show the intent regarding removal time, is not in point. In the Anderson case the matter in question *was* covered by a provision in the contract, and because the provision was unambiguous the court refused to permit an inquiry into the surrounding circumstances for the purpose of ascertaining its meaning. In the instant case the contract is silent regarding the removal time, and the separate oral agreement is not inconsistent with the terms of the contract.

Appellant next contends that even if the court could properly create a contract clause requiring immediate removal of the downed timber, so as to place appellant in default, such default would not justify rescission, but respondents' remedy would lie in an action for damages. In its reply brief appellant points to *Anderson* v. *Palladine, supra,* as determinative of this appeal. The Anderson case involved an absolute conveyance of timber by deed, with the purchase price fully paid. The deed gave the buyer free and undisturbed access to the land, for a period of 10 years, for the purpose of cutting and removing the timber. The buyer's successor in interest had not removed any of the timber during the 10-year period and the seller brought an action to quiet title and thereby forfeit the buyer's interest in the timber. There was evidence that the timber was inaccessible, being in the mountains some 60 miles from a railroad, and that the buyer's successor had at great cost built a railroad into the area and constructed a mill there, but that it would be a few years before the rail line was extended to the tract in question. Upon appeal the court held that the provision for free access during the 10-year period was just that, and not a condition subsequent which operated to forfeit the buyer's interest. Upon expiration of the period the buyer's successor would have to make new arrangements with the landowner for access to the timber. However, in the instant case there was no absolute conveyance of the timber to appellant, but merely a sale of the timber as and when removed by appellant, as is indicated by the payment provision.

As hereinbefore set forth the court found rescission by respondents acquiesced in by appellant and rescission by mutual agreement of the parties. The evidence was highly conflicting but we are satisfied that resolving, as we must, all conflicts in favor of respondents, together with all inferences that may reasonably be drawn from the evidence in support of the judgment, the findings of the trial court are

supported by substantial evidence. ▮ An abandonment of a contract may be implied from the acts of the parties and this may be accomplished by the repudiation of the contract by one of the parties and by the acquiescence of the other party in such repudiation. (*Dessert Seed Co.* v. *Garbus,* 66 Cal.App.2d 838, 847 [153 P.2d 184].) ▮ It is not necessary that the parties say, in so many words, that they do mutually rescind the contract; rescission may be proved by other words and acts. (*Cincotta* v. *Catania,* 95 Cal.App. 99, 100-101 [272 P. 330].) ▮ Acquiescence is shown by the negotiations for a new contract, after respondents had locked the gate, and by the absence of a showing that appellant claimed any further rights under the old contract prior to the commencement of the subject action. Appellant does not contend that the old contract could not be abandoned by a subsequent agreement, but denies that a new agreement was made. ▮ Furthermore, rescission by mutual agreement may be inferred from Howard's testimony that a new agreement was reached and by his notes covering the principal terms.

▮ The court also found that appellant promised to remove the timber with reasonable dispatch, that this promise was a material inducement to respondents, and that appellant did not conduct the removal operations with reasonable diligence. This would justify unilateral rescission by respondents for material failure of consideration. (Civ. Code, § 1689, subd. 2.)

No other points raised require discussion.

In view of the foregoing we are satisfied that the findings and judgment are supported by the evidence and the law.

The judgment is affirmed.

Peek, J., and Paulsen, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.