[Civ. No. 8700. Third Dist. July 20, 1956.]

ROBERT D. GRIFFIN, Respondent, v. BERESA, IN-CORPORATED (a Corporation), Appellant.

Crozier C. Culp for Appellant.

Glenn D. Newton and Frank W. Shuman for Respondent.

VAN DYKE, P. J.—Beresa, Incorporated, a California corporation, appeals from a judgment rendered against it in an action brought by respondent Robert D. Griffin to recover the reasonable value of work done, as said respondent alleged, for appellant's use and benefit. Appellant was engaged in the construction of a housing project near Redding, California, and let to Griffin a contract for the construction of septic tanks and leaching fields. Griffin partially performed the work but abandoned the site before completing the contract. Appellant thereupon completed the work; and Griffin began this action to recover the reasonable value of what he had done up to the time the appellant took over.

The court made the following findings of fact: That at all times covered by the action Griffin was doing business under the name of Griffin Septic Tank Company and was the owner of said business; that he held a contractor's license from the state covering the type of work involved here; that between the 4th of September, 1952 and the 10th of October of that year, he performed work and labor and furnished material to appellant for the construction of septic tanks and drains on appellant's property of the value of $17,085, which had been paid save for the sum of $4,254.52, which sum was due him. The foregoing findings were responsive to a first and second count in the complaint which were common counts. Griffin pleaded a third cause of action alleging that on August 30, 1952, he and appellant had entered into a written contract for the installation of said sanitary structures by Griffin to the number of 160 septic tank systems for the sum of $190 each; that while he was faithfully performing the obligations of that contract, appellant violated the same by preventing further performance; that appellant took possession of the materials and supplies he had on hand and refused to allow him further to occupy the contract site; that had he been permitted to complete the contract he would have been entitled to a total sum of $30,210; and that by reason of appellant's acts he had suffered damage in the sum of $10,000 for loss of profits which he would have made had he been permitted to go on. Responsive to this third count, the trial court found, so far as material here, that the contract had been entered into as alleged and that it was true that Griffin had performed a portion of the contract until on or about October 10, 1952, at which date the parties mutually and voluntarily rescinded the contract. The court concluded that Griffin was entitled to recover from ap-

pellant for that which he had done the balance unpaid and entered judgment for the sum of $4,254.52.

Appellant first contends that the evidence was insufficient to support the court's finding that the parties voluntarily and mutually rescinded the contract at the time when, on October 10, 1952, during the progress of the work, the appellant asserted that it had taken over the job for failure of Griffin to perform his contract. Appellant says that, as a matter of law, Griffin was in default at the time that the contract was taken over, in that his work had been of inferior quality, insufficient in quantity, and that these deficiencies had not been remedied after they had been called to his attention.

■ A contract may be rescinded by consent and agreement (Civ. Code, § 1689, subd. 5), and this may be done at any stage. (*Weber* v. *Alabama-California Gold Mines Co.,* 121 F.2d 663.) ■ An abandonment of a contract may be implied from the acts of the parties, and this may be accomplished by the repudiation of the contract by one of the parties and the acquiescence of the other party in such repudiation and words of the parties to the effect that they are mutually rescinding the contract are not necessary. (*McCreary* v. *Mercury Lbr. Distributors,* 124 Cal.App.2d 477, 486 [268 P.2d 762].) It appears that the trial court was impressed with the fact that appellant and Griffin had contracted rather loosely in that many of the things which later were the cause of dispute between them might have been but were not specifically provided for in the contract. We quote the following from the memorandum opinion which appears in the record:

"All parties hereto have been injured to some extent as a result of this deal, but it is mainly because the contract entered into here was so scanty, as far as the Court can determine, that the exact representation made by each party and the exact promises made can not be satisfactorily determined from the evidence which the Court heard. The contract consisted of some oral statements between the parties, the individual person representing Beresa now being deceased, and in the so called purchase order which was signed by both plaintiff and defendant. It is conceded that a plat of the subdivision was exhibited and that the plaintiff saw the premises and the lay of the land and knew that work was being started in the fall and that speed would be necessary in order to finish the work before the winter rains set in.

"There were apparently several misunderstandings on both sides, and this can easily be understood from the scantiness of the agreement as above mentioned. The plaintiff apparently figured the houses to be built were to be on the exact elevation of the land as it stood when first observed by plaintiff, although this assumption was not justified as anyone should know that the level of the lot in its natural state might not necessarily be the exact level of the house-site. The defendant apparently figured the plaintiff was financially able to carry through the deal without any advances, although I can not find from the evidence that there was a strict representation of this fact. Defendant also thought that plaintiff Griffin himself was going to do the job and be personally present to supervise it, but there is nothing in the agreement proved to me that this was necessarily so, although I agree with the counsel for defendant that one should think said plaintiff would have been more interested in a big job like this than he apparently was at the time.

"My finding therefore is that both sides more or less voluntarily threw up the deal on October 10, 1952 or thereabouts and that neither one is entitled to any damages for any breach of the contract after that date, but that plaintiff Griffin is entitled to recover anything due him on the theory of reasonable value of the labor and materials furnished, both on his common count and on the foreclosure cause of action. The problem therefore is to find what labor and materials he furnished which was of benefit to the defendant, and if these exceed the amount already paid, he should recover the balance."

Differences early arose between the parties concerning both the quality of Griffin's work and the synchronization of his performance with the general program of the housing project. There seems to have been at least some misunderstanding, too, as to the financing of the work, and the parties worked out a solution whereby considerable sums of money were paid for the use of Griffin, but paid directly to laborers and materialmen. It all culminated by appellant "taking over the job" including the personnel and equipment which Griffin had on the site. Griffin went to the site on being told that such was the situation and, although insisting he had fully performed his contract and that he was willing to go forward and complete it, nevertheless, he, after some conversation with appellant's supervising officers, withdrew his equipment and surrendered the job. From all of this the trial court was

warranted in finding that Griffin acquiesced in the evident desire of appellant to terminate the contract with the result that there was a mutual rescission thereof. At the trial Griffin produced evidence that he had been faithfully performing his contract, and, on the other hand, appellant produced evidence that from the beginning he had failed in his contractual duty. This conflicting evidence could be, as it was, taken by the court as picturing a situation where the parties were mutually dissatisfied, each with the other, and as supporting an inference that the ending of their relations was the result of a mutual agreement to terminate them. We hold that the evidence supports the finding of the trial court that the parties mutually rescinded their contract.

Appellant next asserts that Griffin had not complied with the licensing regulations and, therefore, could not recover. Griffin alleged in his pleadings that he was duly licensed as a contractor, and it was shown at the trial that he did possess a proper license; but appellant asserts that the evidence disclosed without conflict that he did not contract in his individual capacity, but on the contrary that he and McPherson as copartners contracted to perform the work; that the copartnership did not possess a license and that McPherson possessed no individual license. The trial court found that at all times mentioned in the complaint Griffin was doing business under the name of Griffin Septic Tank Company and was at all said times the owner of that business. It appeared that all of the negotiations prior to the making of the agreement were had between Griffin and appellant, and that McPherson was generally looked upon as a subordinate of Griffin. Matters in dispute were referred by him to Griffin; indeed, appellant's answer to the complaint did not deny that Griffin was the contractor on the job, or that he was duly licensed to undertake the work. The court made no specific finding as to the contention here advanced that in fact McPherson was a partner and jointly interested with Griffin in the contract, but the finding it did make was sufficient to dispose of the matter if the record supports that finding. We think it does.

It was alleged in a cross-complaint filed by appellant, on the theory of breach of the contract committed by Griffin for which appellant was entitled to recover damages, that when he entered into the agreement he was engaged in a partnership with McPherson and Jackson; that it was agreed between them that the contract would be performed by them

as partners, and that in that capacity they entered into the performance thereof. The trial court found these allegations to be untrue. Appellant refers to evidence on this subject appearing in the record, asserting that, as a matter of law, these findings are unsupported. McPherson testified that he was a partner with Griffin on the job; that it was a 50-50 partnership; that he had not discussed the deal with Griffin, however, before Griffin had bid the job; that he did not come in the deal until after these negotiations were concluded; that he went into the deal for the first time when he signed the first work order issued by appellant which Griffin also signed; that the first time he had seen the job was after work started. Griffin testified that he considered McPherson a partner in the deal and had not listed him as one of his employees. Notwithstanding the foregoing, we think it was competent for the trial court on this record to find untrue the allegations that this was a partnership adventure requiring a joint license of the partners. It is apparent throughout the record that both Griffin and the general manager of appellant dealt with each other on the basis that the contract was that of Griffin and not on the basis that there were partners jointly interested in its performance. Griffin was individually licensed and therefore could contract individually even if he might in other ventures operate as a partner with McPherson and others. There is nothing in the record to the contrary to compel a finding that this was an unlicensed joint venture. The court was not bound by McPherson's conclusionary statement that he was a partner and jointly interested in the contract before the court. Likewise, the court was not compelled, as a matter of law, to construe Griffin's statement that he "considered" McPherson to be a partner as proof that the performance of the contract was a joint operation and a partnership contract.

The judgment appealed from is affirmed.

Schottky, J., and McMurray, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.