Tropic Isles Cable TV Corporation,
dba Saipan Cable T.V.,
Plaintiff/Appellant,
v.
Susana T. **Mafnas**,
dba Travellers' Lodge and Apartelle,
Defendant/Appellee.
Appeal No. 97-015
Civil Action No. 95-0430
September 22, 1998

Argued and Submitted June 24, 1998

Counsel for appellant: Jay H. Sorensen, Saipan.

Counsel for appellee: Peter F. Perez, Saipan.

BEFORE: TAYLOR, Chief Justice, CASTRO, Associate Justice,[1] and WISEMAN, Special Judge.

TAYLOR, Chief Justice:

¶1 ■ Plaintiff/appellant Tropic Isles Cable TV Corporation ("Saipan Cable") appeals the Superior Court's April 22, 1997, findings of fact and conclusions of law in favor of defendant/appellee Susana T. Mafnas ("Mafnas"). We have jurisdiction pursuant to Article IV, § 2 of the Commonwealth Constitution, as amended.[2] We reverse and remand for further proceedings consistent with this opinion.

## ISSUES PRESENTED AND STANDARD OF REVIEW

¶2 ■ Saipan Cable raises two issues for our consideration. First, whether the Superior Court erred in admitting portions of Lysander Tudela's ("Tudela") affidavit over hearsay objections. We review the Superior Court's decision to admit hearsay for an abuse of

---

[1] The Honorable Alexandro C. Castro was sitting as Justice Pro Tem when this appeal was argued and submitted and has subsequently been appointed to the Supreme Court as an Associate Justice.

[2] N.M.I. Const., art. IV, § 2 (1997), was amended by the passage of Legislative Initiative 10-3, ratified by the voters on November 1, 1997, and certified by the Board of Elections on December 13, 1997.

discretion. *In re Estate of Seman*, 4 N.M.I. 129, 130 (1994).

¶3 ▆ The second issue is whether the Superior Court erred in concluding that there was an abandonment of the contract between the parties. We review the Superior Court's findings of fact under the clearly erroneous standard. *Camacho v. L&T Int'l Corp.*, 4 N.M.I. 323, 325 (1996). That is, we will not reverse the finding unless after reviewing all the evidence we are left with a firm and definite conviction that a mistake has been made. *Id.*

## FACTS AND PROCEDURAL BACKGROUND

¶4 Mafnas and Saipan Cable entered into a Standard Hotel Agreement on August 16, 1991, for cable television services. Under the contract, Saipan Cable was to furnish Mafnas' basic television service to 33 separate outlets within the Travellers' Lodge ("Lodge") for three years for a service charge of $534.18 per month. The contract was to begin on the date it was executed. Mafnas was also receiving cable television services from Saipan Cable for her personal residence.

¶5 On August 17, 1992, Susana T. and Jess P. Mafnas sent a fax communication to Saipan Cable requesting disconnection of her cable services. The Mafnas' fax stated in its entirety: "[p]lease discontinue my cable television service effective immediately. I have elected to use an alternate service. I understand that I may be due a refund for unused service which I have prepaid. Please mail any refund to the address below."[3] There is a dispute whether this communication referred to Mafnas' personal account or her account for the Lodge. Shortly thereafter, the Lodge began receiving cable television service from its then rival, Marianas Cablevision ("MCV").[4]

¶6 Around the same time, Saipan Cable disconnected Mafnas' residential service. On May 5, 1994, Saipan Cable sent a fax letter to the Lodge stating in part, "[w]e have not received any payment from your company for 22 months."[5]

¶7 Saipan Cable filed its complaint on May 11, 1995.[6] Saipan Cable filed a motion for summary judgment on January 29, 1996, which was denied in the March 21,

1996 Superior Court order. On June 13, 1996, Mafnas filed a motion for summary judgment or in the alternative to dismiss the complaint. The Superior Court in its August 21, 1996, order denied her motion.[7] In the order denying the motion, the Superior Court directed the parties to submit legal memoranda concerning the law of rescission and whether the agreement had been abandoned. Saipan Cable and Mafnas filed their respective motions. The trial was scheduled for February 4, 1997, and then continued to April 15, 1997. On the day of the trial, both parties submitted their proposed findings of fact and conclusions of law. On April 22, 1997, the court entered its findings of fact and conclusions of law ruling in favor of Mafnas.[8] Saipan Cable timely appealed.

## ANALYSIS

*I. The Superior Court abused its discretion in relying upon the portions of the contents of Tudela's affidavit in its findings of fact and conclusions of law.*

¶8 Tudela's affidavit was admitted during the cross-examination of the plaintiff's witness, Gary McEachern ("McEachern"), and was read into the record by defense counsel while McEachern was testifying. McEachern was the technical operations manager for Saipan Cable through 1992, managing and supervising all installations, construction and other cable and signal matters relating to all of Saipan Cable's accounts. Tudela was the Saipan Cable technician who first discovered the substitution of MCV for Saipan Cable and went the next day with McEachern to the Lodge. During the cross-examination, the following exchange took place between appellee's counsel and McEachern:

Q:  Now, you indicated that you were present with a Lisander [sic] Tudela, is that correct?
A:  Yes, he was -- I was there with him.
Q:  I think your testimony was you were with him when you apparently spoke to Mr. Rufo Mafnas, is that correct?
A:  Yes.
Q:  Are you aware that Mr. Tudela submitted a sworn affidavit to this Court?
A:  Yes.

---

[3] Plaintiff's Exhibit 3, Excerpts of Record ("E.R.") at 28. Although Mr. and Mrs. Mafnas owned the Lodge, the fax communication did not mention the Lodge's name, nor did it refer to the Lodge's hotel contract with Saipan Cable.

[4] Plaintiff's Exhibit 7. MCV and Saipan Cable have since merged into one corporation.

[5] Plaintiff's Exhibit 5, E.R. at 30.

[6] Mafnas filed her answer on September 8, 1995. The delay in filing was due to the sudden death of Mafnas' husband.

[7] *Tropic Isles Cable T.V. Corp., d/b/a Saipan Cable T.V. v. Mafnas d/b/a Traveller's Lodge and Apartelle*, Civil Action No. 95-0430 (N.M.I. Super. Ct. Aug. 21, 1996) (Order Denying Defendant's Motion to Dismiss at 5).

[8] *Tropic Isles Cable T.V. Corp., d/b/a Saipan Cable T.V. v. Mafnas d/b/a Traveller's Lodge and Apartelle*, Civil Action No. 95-0430 (N.M.I. Super. Ct. April 22, 1997) (Findings of Fact and Conclusions of Law at 4) ("Order").

Q: You're aware of that? In his affidavit, he says under penalty of perjury –

Mr. SORENSON: I'm going to object Your Honor. It's purely hearsay ah and –

Mr. PEREZ: Well, I'd like to find out, I mean Mr. McKaren [McEachern] has testified as to what he believe [sic] was the substance of a conversation which ah involved himself, Mr. Tudela, and Mr. Mafnas. He brought it up on direct. I didn't. Right now, I'd like to get to the substance of this conversation which he recollected for the benefit of the Court in response to the direct examination of the plaintiff's counsel.

THE COURT: I'm going to overrule –

MR. SORENSON: I have –

THE COURT: Overrule.

MR. SORENSON: I have no objection to his getting to the substance. My objection is to him quoting from a hearsay document.

THE COURT: Overrule. You opened the door Mr. Sorenson.

Q: Now, Mr. McKearn [McEachern], Mr. Tudela says in his affidavit, sworn affidavit which he submitted to the Court on February 29th, 1996, and is part of the Court's records, that he worked for Saipan Cable TV, you apparently confirmed it?

A: Right.

Q: And he worked there in 1992. He says that I went to disconnect the service of Travellers' Lodge during my employment for Saipan Cable TV. That I was instructed to disconnect the service by management. That I do not recall exactly what date I was instructed to disconnect the service. That during the term of my employment with Saipan Cable TV, it's company policy to notify the user of the disconnecting prior to disconnecting the service. He also states that he makes this affidavit based on personal knowledge.[9]

MR. SORENSON: Objection.

THE COURT: Basis?

MR. SORENSON: It's not a question. He's reading into evidence, ah hearsay with no -- where there is no exception. Mr. Tudela's testimony is admissible only –

END OF TAPE 3983B/SIDE A, TURN TO SIDE B[10]

¶9 In addition, in its findings of fact and conclusions of law, the Superior Court repeatedly refers to the affidavit, and relies upon its substance, when rendering its final opinion:

> Lysander Tudela, an [sic] SCTV [Saipan Cable TV] employee at the time SCTV service to the Lodge was terminated, told this Court that he disconnected the SCTV service to the Lodge pursuant to instructions given by SCTV management. Affidavit of Lysander Tudela, sworn to on February 28, 1996. Mr. Tudela did not appear as a witness at trial, Instead, SCTV's former Technical Operations Manager ("the Manager") testified at trial that Mr. Tudela's sworn testimony was false. The Manager offered no explanation as to how or why SCTV service to the Lodge was disconnected.[11]

¶10 Saipan Cable claims that the affidavit was inadmissible hearsay and therefore, the Superior Court's reference and reliance upon the affidavit in its findings of fact and conclusions of law constitutes reversible error. We agree.

¶11 ██ Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Com. R. Evid. 801(c). Hearsay is generally inadmissible except as provided by the rules or by law. Com. R. Evid. 802. As a general rule, affidavits are considered hearsay and inadmissible.[12] In *Lacey v. Louisiana Coca Cola Bottling Co.*, the appeals court stated:

> Affidavits on material facts are inadmissible because they are hearsay, and deny the privilege of cross-examination; and an ex parte affidavit made without opportunity for cross-examination rarely, if ever, is admissible to prove the facts therein recited. Thus matters material to the issues are to be proved or controverted by the testimony of competent witnesses taken at the trial or by deposition, so as to permit cross-

---

[9] The substance of Tudela's affidavit was read into the record by defense counsel.

[10] Excerpts of Record ("E.R.") 23-25, 91:6-93:6.

[11] "The Court finds that SCTV failed to satisfactorily refute the affidavit of Lysander Tudela, which stated that he, as an SCTV employee, disconnected the Lodge's SCTV service pursuant to instructions by SCTV management." Order at 2, fn 2.

[12] *Holton v. Laucomer*, 504 P.2d 872. 874 (Hawaii 1972); *Doyle v. Union Ins. Co.*, 308 N.W.2d 322 (Nev. 1981).

examination; and where an affidavit is admitted with respect to a material allegation without allowing an opportunity to cross-examine the affiant, the admission of such an affidavit into evidence constitutes substantial error and renders further proceedings nugatory.[13]

¶12 ■ Clearly, Tudela's affidavit statement was being used to show that Saipan Cable was the one who disconnected the television cable service, and that Saipan Cable, therefore, knew the cable service was disconnected. Without an opportunity to cross examine Tudela, his affidavit is unreliable and may not be used for its substance. Further, the affidavit is referred to extensively in the Superior Court's final judgment, wherein the Superior Court states "the Court concludes the Lodge's fax letter or repudiation, *the subsequent disconnection of SCTV service to the Lodge*, and the Lodge's transfer to MCV service constitutes conduct inconsistent with the continued existence of the Standard Hotel Contract."[14] It is unclear if the Superior Court relied upon the affidavit as its only proof that Saipan Cable knew the cable services to the Lodge were disconnected.[15] While there may have been other surrounding circumstances wherein the Superior Court could have found that Saipan Cable knew its cable service to the Lodge was disconnected, the references to Tudela's affidavit, and their reliance upon it as substantive evidence, was error.

*II. The Superior Court erred in concluding that the standard hotel contract was either abandoned or rescinded.*

¶13 The Superior Court rests its conclusion of an abandonment of the contract between Mafnas and Saipan Cable on "the absence of any objection, coupled with the disconnection of the Lodge's service, and SCTV's failure to claim any further rights under the contract until three months prior to its termination." Order at 3. Saipan Cable argues that one of the three prongs upon which this conclusion is based -- the disconnection of service by Saipan Cable -- comes from the affidavit of Tudela, which was incompetent evidence. We agree.

¶14 ■ Rescission is the mutual agreement of the parties to an existing contract to discharge and terminate their duties under the contract. CORBIN ON CONTRACTS § 1236 (1964). The legal effect of a rescission is the discharge of all rights and duties of both parties. *Id.* The Superior Court cites *McCeary v. Mercury Lumber Distributors* for the proposition that an abandonment of a contract may be implied from the acts of the parties and may be consummated by one party's repudiation of the contract and the other's acquiescence in the repudiation.[16] In this case, the Superior Court's conclusion of an abandonment of the contract, or a rescission of the contract, between parties appears to be based upon Saipan Cable's knowledge of the disconnection of its service. The knowledge of the disconnection, however, is elicited from Tudela's hearsay affidavit. Without the affidavit, it is unclear whether the Superior Court could have found an abandonment of the contract. Accordingly, we conclude it was error to rely upon Tudela's statements in finding an abandonment of Mafnas' contract for cable television services.

## CONCLUSION

¶15 For the foregoing reasons, we hereby **REVERSE** the April 22, 1997, order of the Superior Court. We **REMAND** for a determination of damages owed to Saipan Cable under the Lodge's hotel contract, if any.

---

[13] *Lacey v. Louisiana Coca Cola Bottling Co.*, 333 So.2d 769 (La.App. 1984), *quoting* 2A C.J.S. *Affidavits* §58 (1972).

[14] Order at 3 (emphasis added).

[15] At oral argument, counsel for Saipan Cable admitted that the company knew that its cable services had been disconnected and replaced with its then competitor MCV.

[16] *McCreary v. Mercury Lumber Distributors*, 268 P.2d 762 (Cal. 1954).